IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| Robert L. Higgins, | | |
| Debtor. | : | Bankruptcy No. 22-12021-MDC |

# MEMORANDUM

**I.    INTRODUCTION**

The above captioned-bankruptcy case of Robert L. Higgins (the "Debtor") is his third bankruptcy case overall, and his second case filed in the year 2022. His prior 2022 case (the "Prior 2022 Case")[1] was voluntarily dismissed on June 29, 2022. The Debtor then filed the present case (the "Present Case") a little more than a month later, on August 2, 2022.

Pending before the Court is the United States Commodity Futures Trading Commission's (the "CFTC") motion to dismiss (the "CFTC Motion to Dismiss")[2] the Present Case on the grounds that the Debtor is ineligible to be a debtor pursuant to §109(g)(2) of the United States Bankruptcy Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code"), because his Prior 2022 Case was voluntarily dismissed "following the filing of a request for relief from the automatic stay provided by section 362 of [the Bankruptcy Code]." 11 U.S.C. §109(g)(2). The Debtor has filed a response to the CFTC Motion to Dismiss (the "Debtor's Response")[3], opposing dismissal

---

[1] Bankr. Case No. 22-10375.

[2] Bankr. Docket No. 85. On February 3, 2023, the Donald Parker Separate Property Trust filed a joinder to the CFTC Motion to Dismiss (the "Parker Trust Joinder"). Bankr. Docket No. 89. On February 4, 2023, Gottlieb filed a joinder to the CFTC Motion to Dismiss (the "Gottlieb Joinder"). Bankr. Docket No. 90.

[3] Bankr. Docket No. 91.

and arguing he is eligible to be a debtor. For the reasons discussed below, the Court will deny the CFTC Motion to Dismiss.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Debtor's 2016 Case

The Debtor filed his first bankruptcy case under chapter 13 of the Bankruptcy Code on May 18, 2016 (the "2016 Case").[4] The Debtor's plan was confirmed in the 2016 Case, and on July 2, 2021, he received a general discharge. The secured judgment lien of David Gottlieb ("Gottlieb"), as disbursing agent for the estate of SAIF, Inc., on the Debtor's real property (the "Gottlieb Secured Claim") was not discharged. Furthermore, prior to the entry of the discharge order, The Donald Parker Separate Property Trust (the "Parker Trust") filed a non-dischargeability action against the Debtor (the "Non-Dischargeability Action"),[5] seeking a determination that the judgment (the "California Judgment") the Parker Trust obtained in a California action against the Debtor (the "California Action") was non-dischargeable pursuant to §§1328(a)(2) and (a)(4) and §§523(a)(3), (a)(4), and (a)(6) of the Bankruptcy Code. The Non-Dischargeability Action was still pending at the time the Debtor received his general discharge. However, on January 25, 2022, after an evidentiary hearing, the Court granted the Parker Trust's motion for an order retroactively annulling the automatic stay (the "Annulment Order") with respect to the California Judgment, which was obtained two months after the 2016 Case was commenced, due to the Debtor's failure, notwithstanding having been served with the Complaint in the California Action, to provide notice of his bankruptcy case to the Parker Trust.[6]

---

[4] Bankr. Case No. 16-13543.

[5] Adv. Pro. No. 20-00279.

[6] Bankr. Case No. 16-13543, at Docket No. 249.

B.     The Debtor's Prior 2022 Case

On February 16, 2022, while his 2016 Case was still pending, the Debtor filed the Prior 2022 Case.  Two different motions for relief from the automatic stay followed shortly thereafter.

First, on March 4, 2022, the Parker Trust filed a motion for relief (the "Parker Trust Stay Relief Motion"),[7] seeking authority to file a motion in the 2016 Case for a determination that, in light of the Court's findings in the Annulment Order, the California Judgment was non-dischargeable pursuant to §1328(a)(2) of the Bankruptcy Code.  On April 11, 2022, the Court granted the Parker Trust Stay Relief Motion.[8]  The Parker Trust then filed a motion in the 2016 Case seeking an order, pursuant to §1328(a)(2) of the Bankruptcy Code, that the Debtor's debt to the Parker Trust based on the California Judgment was not discharged by his general discharge (the "Discharge Determination Motion"),[9] and on May 11, 2022 the Court entered an Order granting the Discharge Determination Motion and finding that the Debtor's debt to the Parker Trust was excepted from his discharge in the 2016 case.[10]

In the interim, on March 15, 2022, Gottlieb had filed his own motion for relief (the "Gottlieb Stay Relief Motion")[11] pursuant to §362(d)(1), due to the Debtor's alleged failure to provide adequate protection of the Gottlieb Secured Claim.  On May 16, 2022, after an evidentiary hearing, the Court denied the Gottlieb Stay Relief Motion without prejudice.[12]

---

[7] Bankr. Case No. 22-10375, at Docket No. 16.

[8] Id. at Docket No. 37.

[9] Bankr. Case No. 16-13543, at Docket No. 260

[10] Id. at Docket No. 265.

[11] Bankr. Case No. 22-10375, at Docket No. 16.

[12] Bankr. Case No. 22-10375, at Docket No. 56.

Although certain activity in the Prior 2022 Case followed the Court's denial of the Gottlieb Stay Relief Motion, for present purposes the only relevant event is the Debtor's filing of a notice of dismissal of the Prior 2022 Case on June 28, 2022.[13] The Court entered an Order the following day dismissing the Prior 2022 Case.[14]

### C.    The Present Case

As noted *supra,* a little more than a month after the Prior 2022 Case was dismissed, the Debtor filed the Present Case on August 2, 2022. Concurrently with his chapter 13 petition, the Debtor filed a motion (the "Stay Extension Motion")[15] pursuant to §362(c)(3)(B) of the Bankruptcy Code for a continuation of the automatic stay in the Present Case beyond the 30-day period after which it would otherwise expire under §362(c)(3)(A), due to the Debtor's Prior 2022 Case having been pending but dismissed within the preceding one-year. In the Stay Extension Motion, the Debtor asserted that he voluntarily dismissed the Prior 2022 Case "to avail himself" of the increased debt limit for chapter 13 debtors of $2,750,000.00, provided for by the Bankruptcy Threshold Adjustment and Technical Corrections Act enacted by the United States Congress on June 21, 2022 (the "Increased Debt Limit").[16]

Both the Parker Trust and Gottlieb objected to the Stay Extension Motion and argued that the Present Case should be dismissed as a bad faith filing.[17] The Parker Trust subsequently filed a motion to dismiss the Present Case as a bad faith filing pursuant to §1307(c) of the Bankruptcy

---

[13] Id. at Docket No. 77.

[14] Id. at Docket No. 78.

[15] Bankr. Docket No. 4.

[16] Stay Extension Motion, at ¶¶4-5, 10.

[17] Bankr. Docket Nos. 12, 16.

Code (the "Parker Trust Motion to Dismiss").[18]  The Court held an evidentiary hearing on the Parker Trust Motion to Dismiss on November 18, 2022, at which the Debtor testified that he dismissed the Prior 2022 Case and filed the Present Case to take advantage of the Increased Debt Limit enacted while the Prior 2022 Case was pending.  At the conclusion of the hearing on the Parker Trust Motion to Dismiss the Court took the matter under advisement.

On January 24, 2023, the CFTC filed the CFTC Motion to Dismiss.  The Debtor filed his Response on February 7, 2023, and the Court held a hearing on February 23, 2023, after which the Court took the matter under advisement.

### III. DISCUSSION

The CFTC argues that the Debtor's ineligibility is <u>mandated</u> by the plain language of §109(g)(2) of the Bankruptcy Code, which provides, in relevant part, that:

> "Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if …
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title."

11 U.S.C. §109(g)(2).  According to the CFTC, this provision requires dismissal of a subsequent case "whenever voluntary dismissal [of a prior case] is subsequent in time to a request for relief from the automatic stay."  CFTC Motion to Dismiss, at 1.  The CFTC therefore concludes that the Debtor was ineligible to file the Present Case because he voluntarily dismissed his Prior 2022 Case after the Parker Trust Stay Relief Motion and the Gottlieb Stay Relief Motions were filed.  *Id.* at 4.

---

[18] Bankr. Docket No. 18.

The Debtor responds that the only reason he voluntarily dismissed the Prior 2022 Case was to take advantage of the Increased Debt Limit, and that both the Parker Trust Stay Relief Motion and the Gottlieb Stay Relief Motion were resolved prior to his voluntary dismissal. Response, at 5-6. As such, the Debtor asserts, he was not attempting to obtain another automatic stay to thwart a stay relief motion. *Id.* at 6. The Debtor urges the Court to reject the CFTC's "temporal approach" to §109(g)(2), which looks only to whether dismissal occurred after the filing of a stay relief request, and to instead adopt a "causal approach", looking to whether the dismissal was "because of" or "as a result of" the stay relief request. *Id.* at 6-7. The Debtor argues that because he did not dismiss the Prior 2022 Case as a result of either stay relief motion, he should not be barred from filing the Present Case under §109(g)(2).

Courts have split on the two varying approaches advocated for by the CFTC and the Debtor. In this district, the court in *In re Munkwitz,* 235 B.R. 766, 768 (E.D. Pa. 1999), observed that the dispute centers around the meaning of the term "following" in §109(g)(2)'s phrase "following … a request for relief from the automatic stay." The temporal approach interprets "following" to mean "after" and holds that the statute must be applied *whenever* a debtor obtains a voluntary dismissal after a stay relief motion is filed, without regards to the circumstances, the equities, the time interval between the two events, or the disposition of the stay relief motion. *Id.* The causal approach, on the other hand, interprets "following" to mean "because of" or "as a result of", and "requires a showing of a causal relationship between the voluntary dismissal and a creditor's motion for stay relief." *Id.*

The *Munkwitz* court found the cases adopting the mandatory temporal approach to be persuasive given what it viewed as the plain, ordinary meaning of the word "following" as "coming after or next in order of time." *Id.* (citing *The Random House Dictionary of the English*

*Language* 551 (Unabridged ed. 1983)). The court acknowledged that this approach may be over-inclusive because it potentially covers cases where no abuse of the bankruptcy system was present, but viewed "a blanket rule to curb abuse of the Bankruptcy Code [as] sensible." *Id.* at 769.[19] The court did not view a literal reading to be contrary to Congressional intent, and believed any hardship presented by mandatory application of §109(g)(2) "is partly within a debtor's control in electing to request a dismissal." *Id.*

The relatively recent decision of *Ruth v. Swigert (In re Swigert)*, 601 B.R. 913 (Bankr. M.D.Pa. 2019) adopted the causal approach. The *Swigert* court recognized that both approaches are "textually allowable," but found "significant problems" with the temporal approach taken by *Munkwitz* and other decisions: "First, it erroneously assumes the word 'following' has a clear and fixed meaning. To the contrary, and as set forth below, the word 'following' is imprecise and is therefore susceptible to multiple meanings and interpretations. Second, this approach leads to seemingly absurd results, or at least results that are extreme or excessive. By ignoring the context within which the word 'following' appears, courts adopting this approach appear to be so focused on the meaning of the word that they lose sight of the overall meaning of the provision as a whole." *Id.* at 921-922.[20] Instead, the *Swigert* court adopted the causal approach requiring a connection between dismissal of the prior case and the motion for stay relief

---

[19] The *Munkwitz* court stated that the purpose of §109(g)(2) was to "'prevent debtors from using repetitive filings as a method to frustrate creditor's efforts to recover what is owed them.'" *Id.* at 768-69 (citing 2 Collier on Bankruptcy ¶109.08, 109-48 (15th ed. Revised 1999)).

[20] The *Swigert* court also rejected what it termed a "purposive approach" employed by some courts, whereby those courts' objective is "to ascertain the legislative intent of the provision, and if possible, to effectuate the purpose of the lawmakers." *Id.* at 922. The *Swigert* court viewed this approach as "nebulous" because courts employing it "consider the prevention of abusive tactics on the part of the debtor to be controlling … [and] apply the provision only where they subjectively perceive that doing so will accomplish that goal." *Id.* Although this Court is uncertain where the *Swigert* court draws the line between the purposive approach and the causal approach, it agrees with *Swigert* that interpretation of §109(g)(2)'s meaning cannot be dependent on courts' subjective determination on a case-by-case basis whether the purpose of the statute is served by barring a subsequent filing.

7

referenced by §109(g)(2). *Id.* at 923. The court reasoned that this approach "dodges the absurd or extreme results that can occur from a cramped reading of the provision that is based entirely upon the possible meaning of each of its constituent words … [T]his approach avoids the rather backward assumption that courts should look to the intent of the legislature rather than the meaning of the provision itself." *Id.*

This Court, in the absence of controlling authority in the Third Circuit, agrees with the *Swigert* court and likewise adopts the causal approach to interpretation of §109(g)(2). Like the *Swigert* court, the Court believes a cramped reading of the word "following" to mean "subsequent to" strips §109(g)(2) of its intended purpose, which as the *Munkwitz* court noted, is to prevent debtors from using repetitive filings as a method of frustrating creditor's efforts to recover what is owed them. *Munkwitz,* 235 B.R. at 768. Furthermore, as the *Swigert* court noted and even the *Munkwitz* court acknowledged, the temporal approach can lead to overly harsh results that do nothing to serve the statute's purpose of preventing abusive bankruptcy filings.[21] Rather, in light of the provision's purpose, the Court believes the better approach is to view "following" to mean that a debtor's voluntary dismissal of a prior case was "as a result of" a stay relief motion, in effect attempting to forestall a creditor from obtaining relief from the stay by "resetting the clock."

Applying the causal approach here, the Court finds that the Debtor did not voluntarily dismiss the Prior 2022 Case as a result of either the Parker Trust Stay Relief Motion or the Gottlieb Stay Relief Motion. As the Debtor argues, and as he testified to at the hearing on the

---

[21] If the word "following" is interpreted to strictly mean "subsequent to", a stay relief motion that has long since been filed and resolved, or even voluntarily withdrawn, would operate to preclude a debtor from dismissing their case and filing another one within 180 days. Not only does such an interpretation not serve to prevent abusive filings, it may actually invite abusive stay relief motions from creditors, since the mere filing of a stay relief motion would trigger §109(g)(2).

Parker Trust Motion to Dismiss, he dismissed the Prior 2022 Case to take advantage of the Increased Debt Limit enacted while the Prior 2022 Case was pending.[22]  Both the Parker Stay Relief Motion and the Gottlieb Stay Relief Motion were resolved at the time the Debtor dismissed his case, rendering it implausible that the Debtor did so as a result of those motions rather than his stated purpose.  Because he did not do so, the Court finds that §109(g)(2)'s prohibition does not apply to the Present Case, and the CFTC's Motion to Dismiss the Present Case due to the Debtor's alleged ineligibility will be denied.

## IV. CONCLUSION

For the reasons set forth above, the CFTC Motion to Dismiss is denied.  An order consistent with this Memorandum will be entered.

Dated: March 3, 2023

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Robert J. Lohr, II, Esquire
Lohr and Associates, Ltd.
1246 West Chester Pike, Suite 312
West Chester, PA 19382

Melissa C. Chiang, Esquire
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581

Deirdre M. Richards, Esquire
Fineman Krekstein & Harris
1801 Market Street, Suite 1140

---

[22] The Court recognizes that at the time the Debtor dismissed the Prior 2022 Case, there was a pending motion by the Parker Trust to dismiss the case based on the Debtor exceeding the debt limits in effect at the time the case was filed, and that the Debtor's dismissal of the case and filing of the Present Case came in the face of that pending motion.  While that may go to the Parker Trust's arguments regarding whether the Present Case was filed in bad faith, it is not the issue under §109(g)(2) on which the CFTC Motion to Dismiss is based

Philadelphia, PA 19103

Thomas J. Barnes, Esq.
Egbert & Barnes, P.C.
349 York Road, Suite 100
Willow Grove, PA 19090

Kenneth E. West, Esquire
Chapter 13 Trustee
P.O. Box 1229
Philadelphia, PA 19105

United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106-2912