IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| Robert L. Higgins, | : | |
| Debtor. | : | Bankruptcy No. 22-12021-MDC |

# **MEMORANDUM**

**I.   INTRODUCTION**

David Gottlieb, Disbursing Agent for the Estate of SAIF, Inc. ("Gottlieb"), filed a Proof of Claim (the "Gottlieb Claim")[1] against the debtor, Robert Higgins (the "Debtor"), based on a judgment (the "California Judgment") entered against the Debtor by the United States Bankruptcy Court for the Southern District of California (the "California Bankruptcy Court"). Pending before the Court for resolution is the Debtor's objection to the Gottlieb Claim (the "Claim Objection"),[2] to which Gottlieb filed a response (the "Gottlieb Response").[3] The Court held a hearing on the Claim Objection and the Gottlieb Response on December 13, 2022 (the "Hearing"), after which the Court took the matter under advisement.[4]

For the reasons discussed herein, the Court will sustain the Claim Objection to the extent it seeks reduction of the allowed amount of the Gottlieb Claim, as set forth below.

---

[1] Proof of Claim No. 4.

[2] Bankr. Docket No. 67.

[3] Bankr. Docket No. 71.

[4] All matters in this case were held in suspense from June 20, 2023 through September 7, 2023 due to the criminal proceedings pending against the Debtor and the possible implication of his rights under the Fifth Amendment of the United States Constitution. The matter came back under advisement as of that date.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The Gottlieb Claim

On October 14, 2022, Gottlieb filed the Gottlieb Claim, asserting a secured claim in the amount of $603,112.76 (the "Claim Amount"). The stated basis for the claim is "money judgment transferred from foreign jurisdiction."[5] The money judgment to which the Gottlieb Claim refers is the California Judgment, entered by the California Bankruptcy Court on April 20, 2012 in favor of Gottlieb against, among others, the Debtor. The California Judgment found the Debtor and the other defendants jointly and severally liable for a total judgment amount of $264,416.68 (the "Judgment Amount"), based on their default under the terms of a settlement agreement with Gottlieb that required the payment of $250,000 in monthly installments (the "Settlement Agreement"), which was attached to the California Judgment as Exhibit 1. In addition to the Judgment Amount, the California Judgment ordered the Debtor and other defendants liable for "interest from the date of entry of this order to the date of [Gottlieb's] recovery of the Judgment Amount at the maximum legal rate."

The Claim Amount includes post-judgment interest, as of October 12, 2022, in the amount of $338,696.08 (the "Post-Judgment Accrued Interest"), as well as $59,707.16 in time and expenses expended on efforts to collect the California Judgment since December 2015 (the "Fees and Expenses"). Gottlieb bases the calculation of Post-Judgment Accrued Interest on a 15% annual interest rate, "per the [Settlement Agreement]." Paragraph 4 of the Settlement Agreement provides, in relevant part, that "interest on the $250,000 investment made by SAIF Inc. to CAMI pursuant to that certain Subscription Agreement dated July 25, 2005 will continue

---

[5] The Gottlieb Claim asserts that it is secured under 42 Pa.C.S. §4303(a) as a judgment lien against the Debtor's real property in Chester County, Pennsylvania. The California Judgment was transferred to the Pennsylvania Court of Common Pleas for Chester County on December 24, 2012.

to accrue monthly (in the amount of $3,125) at the annual rate of 15%." With respect to the Fees and Expenses, the Gottlieb Claim attaches a general itemization of asserted time and expenses, totaling $59,707.16 from December 2015 to September 2022, though such itemization is not broken down by day, task and time spent.

After crediting a $36,303.92 payment received in 2019, and adding the Judgment Amount, Post-Judgment Accrued Interest, and Fees and Expenses, the Claim Amount totals $603,112.76 as of October 12, 2022.

## B.     The Claim Objection and the Response

The Claim Objection asserts that (a) the Gottlieb Claim's calculation of Post-Judgment Accrued Interest incorrectly uses the pre-judgment rate of 15% set forth in the Settlement Agreement (the "Contract Rate"), rather than the post-judgment rate applicable under 28 U.S.C. §1961 (the "Statutory Rate"), and (b) the Gottlieb Claim's inclusion of the Fees and Expenses is improper because they all were incurred post-judgment.

With respect to the Post-Judgment Accrued Interest calculation, the Debtor acknowledges that parties can negotiate a post-judgment interest rate that differs from the Statutory Rate, but argues that here the Settlement Agreement did not contain any provision or agreement regarding post-judgment interest. The Debtor asserts that the Contract Rate provided for in the Settlement Agreement in the event of default does not apply to post-judgment interest, which the parties would have had to provide for with clear, unambiguous, and unequivocal language under *Sovereign Bank v. REMI Capital, Inc.*, 49 F.4th 360 (3d Cir. 2022). Because they did not, and because the California Judgment provides that post-judgment interest will accrue "at the maximum legal rate," the Debtor argues the Statutory Rate applies. That rate, according to the Debtor, is 0.17%, which is the weekly average 1-year constant maturity treasury yield as of April

3

13, 2012, *i.e.,* the week immediately prior to entry of the California Judgment. Applying that rate, and accounting for the $36,303.92 payment already made to Gottlieb in partial satisfaction of the California Judgment, the Debtor asserts that the correct calculation of Post-Judgment Interest through the date of his bankruptcy petition (the "Petition Date") is $4,520.13, resulting in a claim of $232,632.89.

With respect to the Fees and Expenses, the Debtor asserts that Gottlieb is not entitled to include any post-judgment fees and expenses because, like interest at the Contract Rate, these were not provided for in the Settlement Agreement through clear, unambiguous and unequivocal language. Therefore, under the merger doctrine as articulated in *Sovereign Bank* and *In re Stendardo,* 991 F.2d 1089, 1099 (3d Cir. 1993), the Fees and Expenses cannot be a component of the Gottlieb Claim.

In his Response, Gottlieb argues that paragraph 14 of the Settlement Agreement, providing that interest "will continue to accrue" at the Contract Rate of 15% annually, represents mutual agreement by the parties as to the post-judgment interest rate and, under *Citicorp Real Estate, Inc. v. Smith,* 155 F.3d 1097, 1108 (9th Cir. 1998), a waiver of the right to have interest calculated at the Statutory Rate. Gottlieb asserts that the California Judgment, by expressly referencing and attaching the Settlement Agreement as an exhibit, incorporated the agreement's terms by reference, which is permissible and enforceable in the Ninth Circuit under *Reno Air Racing Ass'n., Inc. v. McCord,* 452 F3d 1126 (9th Cir. 2006). For the same reason, Gottlieb argues, paragraph 20 of the Settlement Agreement, providing for the recovery of legal fees and costs by the prevailing party in the event of dispute regarding the agreement, was incorporated

4

by reference in the California Judgment and authorizes the Fees and Expenses component of the Gottlieb Claim.[6]

## III. DISCUSSION

### A. Post-Judgment Interest on the California Judgment is Calculated at the Statutory Rate

The Court finds the Statutory Rate applies to the California Judgment because the Settlement Agreement merged into the judgment upon its entry, and did not provide in clear, unambiguous, and unequivocal language that the Contract Rate survived merger to apply post-judgment. *Sovereign Bank* demands this result.

In *Sovereign Bank*, the Third Circuit first explained that the doctrine of merger "provides that 'when a plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be "merged" in the judgment.'" *Sovereign Bank,* 49 F.4th at 365 (quoting *Stendardo,* 991 F.29 at 1099).[7] The effect of merger on a post-default interest rate is therefore that it "ceases to accrue at a previously stipulated rate upon entry of a judgment. At that moment, interest on the new obligation, the judgment to be satisfied, accrues at the rate provided by statute or court rule." *Id.* (citing *Stendardo,* 991 F.2d at 1095). Where the judgment at issue is a federal money judgment, as here, 28 U.S.C. §1961 governs the applicable rate. *Id.* The parties to an agreement,

---

[6] The Response also includes a brief argument that the doctrine of *res judicata* applies to prohibit this Court from modifying the California Judgment. The Court dispensed with this argument at the Hearing, ruling that *res judicata* does not preclude this Court from interpreting the legal effect of the California Judgment in the Debtor's bankruptcy proceeding. *See In re Donaghy,* 853 Fed. Appx. 798, 800 (3d Cir. 2021) (the doctrine of *res judicata* holds that a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action).

[7] The Ninth Circuit, where the California Judgment was obtained, also recognizes the merger doctrine. *See, e.g., Water West, Inc. v. Entek Corp.,* 788 F.2d 627, 629 (9th Cir. 1986) (claims litigated in Nevada action were merged into Nevada judgment).

5

however, may modify the default rule, but must do so with language that "demonstrates *clearly, unambiguously, and unequivocally* that the parties intended interest on the judgment to accrue at a stipulated rate." *Id.* at 366 (emphasis added). Where parties agree to the entry of a consent judgment upon default, "it is incumbent upon the parties … to fully memorialize their agreement on the judgment's face or through incorporation of other documents by reference." *Id.* at 367. Moreover, the Court is bound to interpret a consent judgment "'within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.'" *Id.* (quoting *U.S. v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971), and ultimately finding that within the four corners of the consent judgment at issue, there was no language from which the court could infer that the parties intended the judgment to accrue interest at a different rate than is provided in 28 U.S.C. §1961).[8]

In light of the principles the Third Circuit articulated in *Sovereign Bank,* the Court finds that the Settlement Agreement's provision for the Contract Rate of 15% did not survive merger, as there is no language in the Settlement Agreement clearly, unambiguously, and unequivocally demonstrating Gottlieb's and the defendants' intent that it would. The Court rejects Gottlieb's

---

[8] At the Hearing, Gottlieb seemed to argue that the Ninth Circuit standard for determining whether parties agreed to have a pre-judgment default interest rate apply post-judgment is more relaxed than the "clear, unambiguous, and unequivocal" standard set forth in *Sovereign Bank.* In support, he pointed the Court to *Citicorp Real Estate, Inc. v. Smith,* 155 F.3d 1097, 1107-08 (9th Cir. 1998). There the Ninth Circuit found that "the language of [an] arbitration award indicate[d] a mutual intent by the parties to have pre- and post-judgment interest calculated at the contract interest rate," and therefore the statutory rate was inapplicable. *Id.* at 1108. The language in the arbitration award on which the court relied provided for the default rate set in the underlying note to apply both pre-judgment and "after judgment until collection." *Id.* This is an example of clear, unambiguous, and unequivocal language establishing "mutual intent" to have post-judgment interest calculated at the contract interest rate. The Court therefore does not agree with Gottlieb that the Ninth Circuit standard is more relaxed than the Third Circuit's, and in fact agrees with the *Sovereign Bank* decision's citation to the *Citicorp Real Estate* decision in stating that the Ninth Circuit (and other Circuits) had concluded that if parties want to override the general rule on merger and specify a post-judgment interest rate, they must express such intent through clear, unambiguous and unequivocal language. *Sovereign Bank,* 49 F.4th at 365.

6

argument that paragraph 4 of the Settlement Agreement, providing that interest "will continue to accrue" at the Contract Rate, evidences such intent. Where the Third Circuit requires agreements regarding the post-judgment survival of a stipulated default interest rate to be clear, unambiguous, and unequivocal, this language does not meet that standard. Its application post-judgment is unclear, and that ambiguity is demonstrated by the next sentence in paragraph 4: "The accrued but unpaid interest shall become payable upon: (1) service of notice of default on Defendants as set forth in paragraph 16 indicating Plaintiff's intent to move for entry of the Stipulated Judgment, and (2) the passage of ten (10) days thereafter without Defendants having cured the deficiency." This sentence appears to contemplate that the accrued post-default interest, calculated by the Contract Rate, would become payable *pre-judgment*, after Gottlieb had given notice of default and no timely cure had been provided. Paragraph 4 arguably only applies to pre-judgment amounts, and therefore is ambiguous at best as to whether it would apply post-judgment.

      This conclusion is reinforced when paragraph 15 of the Settlement Agreement is considered. That paragraph provides that in the event of a payment default, the defendants agreed to the entry of a stipulated judgment (discussed further *infra*) "for the Settlement Amount plus $3,125 per month in accrued but unpaid interest … The accrued but unpaid interest due at the time of filing of the Stipulated Judgment shall be calculated by adding the $3,125 in monthly interest beginning with the month of February 2009 through the end of the month in which the Cure Period … expires." The parties inarguably intended that the stipulated judgment to be entered upon default would include the accrued monthly interest of $3,125, calculated by application of the 15% Contract Rate, through the date just prior to submission of the stipulated judgment. Having provided for this end-date for the inclusion of the pre-judgment accrued

7

interest, the paragraph fails to address whether the $3,125 monthly interest will continue to accrue post-judgment. This omission, together with paragraph 4, leaves it unclear whether the parties intended the Contract Rate to continue to apply post-judgment.

The ambiguity of the Settlement Agreement is rendered even more opaque by the form of stipulated judgment (the "Form Stipulated Judgment") to which the parties agreed and attached as Exhibit A to the Settlement Agreement. The Form Stipulated Judgment is nearly identical to the California Judgment that was entered, but for certain minor grammatical edits presumably made by the California Bankruptcy Court after it was submitted. That Form Stipulated Judgment, like the California Judgment, provided that the defendants were ordered to pay "the Judgment Amount plus interest from the date of entry of the this [*sic*] Order to the date of the Disbursing Agent's recovery of the Judgment Amount *at the maximum legal rate*." (emphasis added). As such, the parties addressed the applicable post-judgment interest rate not by providing for the Contract Rate of 15% (or a monthly sum certain of $3,125), but rather by reference to the maximum legal rate. As discussed *supra,* one of *Sovereign Bank's* lessons is that the parties to a consent judgment must fully memorialize their agreement that a stipulated interest rate survives judgment by clear, unambiguous, and unequivocal language on the judgment's face or through incorporation of other documents by reference. Here, rather than demonstrating such clarity, the Form Stipulated Judgment to which the parties agreed, and which became the California Judgment, provides clearly for the maximum legal rate, *i.e.,* the Statutory Rate, rather than the Contract Rate. *Sovereign Bank* holds that the Court is not to infer the parties' intent to have a contract interest rate survive where the four corners of a consent judgment clearly does not provide for it, and that restriction is applicable here.

8

It is true that *Sovereign Bank* allows for parties' agreement to a post-judgment rate to be demonstrated through an order's incorporation of other documents by reference. *Sovereign Bank,* 49 F.4th at 367.[9] Gottlieb argues that is precisely what happened here, by virtue of the California Bankruptcy Court attaching the Settlement Agreement as an exhibit to the California Judgment. There are a number of problems with that argument. First, there is no indication within the four corners of the California Judgment that by attaching the Settlement Agreement to it, the California Bankruptcy Court was incorporating all of its terms by reference. Simply attaching the agreement without any language providing that its terms are incorporated by reference into the judgment does not satisfy *Sovereign Bank's* mandate for clarity when making a stipulated default interest rate applicable post-judgment. Second, as discussed *supra,* the California Judgment expressly provides for post-judgment interest at the maximum legal rate. This undercuts the argument that the California Judgment incorporated by reference the Contract Rate, because had it done so, there would have been no need to separately address what post-judgment rate applies. Third, also as discussed *supra,* even if the California Judgment had clearly incorporated the Settlement Agreement by reference, the Settlement Agreement itself lacks clear, unambiguous, and unequivocal language that the Contract Rate applies post-

---

[9] Gottlieb relies primarily on *Reno Air Racing Ass'n, Inc. v. McCord,* 452 F.3d 1126 (9th Cir.) to argue that the California Bankruptcy Court could and did incorporate the terms of the Settlement Agreement by reference, including application of the Contract Rate post-judgment. Presumably Gottlieb does so to establish that the California Bankruptcy Court had authority under Ninth Circuit law to incorporate the Settlement Agreement's terms by reference. As discussed, *Sovereign Bank* likewise permits parties to contract around the Statutory Rate by having a consent judgment incorporate an agreement by reference. Therefore the Court finds no conflict between Third and Ninth Circuit law on this point, and arguably Gottlieb's argument is better supported by *Sovereign Bank*, which specifically addressed the applicable post-judgment interest rate, rather than *Reno Air,* which addressed the narrow issue of whether a trial court's temporary restraining order could attach and incorporate by reference an exhibit where it was required to address the enjoined conduct with specificity. *See Reno Air,* 452 F.3d at 1133.

judgment, and therefore does not support departure from the merger doctrine and application of the Statutory Rate.

### B.   Fees and Expenses are Not Includable in the Claim Amount

For the same basic reason that post-judgment interest on the California Judgment is to be calculated at the Statutory Rate, rather than the Contract Rate, the asserted Fees and Expenses are not properly included in the Claim Amount. Although paragraph 20 of the Settlement Agreement provided that the prevailing party was entitled to recover its legal fees and costs in the event of a dispute regarding the agreement, the Settlement Agreement merged into the California Judgment. As *Sovereign Bank* stated, upon merger the original claim is extinguished and rights upon the judgment are substituted for it. The California Judgment did not provide for Gottlieb's entitlement to post-judgment legal fees and expenses, nor did it clearly incorporate by reference paragraph 20 of the Settlement Agreement simply by attaching it to the judgment. Moreover, paragraph 20 does not clearly provide that such fees and expenses could be recovered post-judgment. As such, the Fees and Expenses, all of which are temporally post-judgment, are not properly included in the Claim Amount.

### C.   Application of the Statutory Rate to the California Judgment

Having determined that the Statutory Rate applies to the California Judgment, the question remaining is the amount of the Gottlieb Claim that is allowable after application of that rate to the Judgment Amount of $264,416.68.

The California Judgment was entered in federal court, and therefore 28 U.S.C. §1961 dictates the applicable rate to be applied. *Sovereign Bank,* 49 F.4th at 365. That section provides, in relevant part, that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. §1961.

The Debtor argues that the weekly average 1-year constant maturity Treasury yield in effect as of April 13, 2012, *i.e.* the calendar week preceding the entry of the California Judgment on April 20, 2012, was 0.17%. *See* Claim Objection, at ¶23. In support, attached as Exhibit 4 to the Claim Objection is a graph obtained from the St. Louis Federal Reserve Bank's FRED database, establishing that on April 13, 2012, the yield on U.S. Treasury Securities at 1-year constant maturity was 0.17%. Gottlieb has not contested the accuracy of that rate, and the Court finds that the Debtor's use of the FRED database to establish the applicable post-judgment rate under 28 U.S.C. §1961 is both appropriate and accurate. *See Vanderklok v. U.S.*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (courts may take judicial notice of information publicly available on government websites) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). [10]

As noted *supra,* applying the Statutory Rate of 0.17% to the Judgment Amount, and crediting the $36,303.92 payment made to Gottlieb by the chapter 13 trustee in the Debtor's 2016 bankruptcy case, the Debtor asserts that the correct calculation of Post-Judgment Interest through the Petition Date is $4,520.13, resulting in a total claim of $232,632.89. The Court agrees with this calculation, which Gottlieb has not contested in the Response other than to assert

---

[10] 28 U.S.C. §1961 provides that "The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges." The United States Courts' website reflects that its source for published interest rates is the Federal Reserve Board's (the "Fed") Selected Interest Rates statistical release (the "H.15"), and that weekly and monthly averages on U.S. Treasury Securities (among other rates) is available through the Fed's Data Download Program. *See* https://www.uscourts.gov/services-forms/fees/post-judgment-interest-rate. The Fed's website advises that weekly and monthly average rates are accessible through the Data Download Program, or alternatively, from the St. Louis Federal Reserve Bank's FRED database. *See* https://www.federalreserve.gov/releases/h15/h15_technical_qa.htm.

that the Contract Rate is to be used to calculate interest. As discussed *supra,* the Court has rejected that argument.

## IV.   CONCLUSION

For the reasons set forth above, the Claim Objection will be sustained to the extent it seeks reduction of the allowed amount of the Gottlieb Claim, and the Gottlieb Claim shall be reduced and allowed in the amount of $232,632.89.[11]

An order consistent with this Memorandum will be entered.

Dated:  January 25, 2024

MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Robert J. Lohr, II, Esquire
Lohr and Associates, Ltd.
1246 West Chester Pike, Suite 312
West Chester, PA 19382

Melissa C. Chiang, Esquire
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581

Deirdre M. Richards, Esquire
Fineman Krekstein & Harris
1801 Market Street, Suite 1140
Philadelphia, PA 19103

Thomas J. Barnes, Esq.
Egbert & Barnes, P.C.
349 York Road, Suite 100
Willow Grove, PA 19090

---

[11] The Gottlieb Claim includes in the Claim Amount accrued post-petition interest, whereas the Claim Objection cuts off its calculation of post-judgment accrued interest as of the Petition Date. The Claim Objection does not address, and therefore the Court does not either, whether Gottlieb is an oversecured creditor entitled to the payment of post-petition interest under a confirmed plan. *See* 11 U.S.C. §506(b); *U.S. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (§506(b) entitles a creditor to receive post-petition interest on a nonconsensual oversecured claim allowed in a bankruptcy proceeding).

12

Kenneth E. West, Esquire
Chapter 13 Trustee
P.O. Box 1229
Philadelphia, PA 19105

United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106-2912