UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF PENNSYLVANIA

|                                  |   |                          |
|----------------------------------|---|--------------------------|
|                                  | : |                          |
| IN RE:                           | : | Case No.  22-12021       |
|                                  | : |                          |
| ROBERT L. HIGGINS    CH: 13      | : |                          |
|                                  | : |                          |
| Objection Filed By Debtor To     | : | Philadelphia, Pennsylvania |
| Claim Number 4 By Claimant David | : | December 13, 2022        |
| Gottlieb, Disbursing Agent.      | : | 12:13 p.m.               |
|                                  | : |                          |
| . . . . . . . . . . . . . . . .  | : |                          |

BEFORE THE HONORABLE MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:                 Robert Lohr, Esq.
                                Lohr and Associates, Ltd.
                                1246 West Chester Pike
                                Suite 312
                                West Chester, PA 19382
                                610-701-0222

For David Gottlieb:             Thomas J. Barnes, Esq.
                                349 York Road
                                Willow Grove, PA 19090
                                215-886-6600

Proceedings recorded by electronic sound recording;
transcript produced by TheRecordXchange.

*TheRecordXchange*
www.trxchange.com · (800) 406-1290

```
 1   DECEMBER 13, 2022                                12:13 P.M.

 2           THE COURT:  -- Number 23, which Robert Higgins.  And

 3   it is objection to Claim Number 4.

 4           Counsel for the Movant?

 5           MR. LOHR:  Good morning, Your Honor.  Robert Lohr,

 6   representing the Debtor, with the Debtor on the line as well.

 7           THE COURT:  Okay.  Debtor.

 8           Who else is here?

 9           MR. BARNES:  Thomas Barnes for David Gottlieb.

10           THE COURT:  Anybody else?  Okay.

11           All right.  Mr. Lohr, where are we on this objection?

12           MR. LOHR:  I'm ready to present argument, Your Honor,

13   and I'd like to be able to get through that, if I could?

14           THE COURT:  Okay.  You believe that there's no

15   disputed fact?  That this is just argument.

16           MR. LOHR:  I believe it is, Your Honor.  Yeah, I

17   think it's subject to interpretation of documents that have

18   been long used in this bankruptcy case.

19           THE COURT:  Okay.  And counsel for the Claimant.  You

20   agree that this is strictly legal argument and no evidentiary

21   needs --

22           MR. BARNES:  I do.

23           THE COURT:  -- to be made?  Hello?

24           MR. BARNES:  Yeah, I said I do --

25           THE COURT:  Okay.
```

1          MR. BARNES:  -- Your Honor.

2          THE COURT:  Okay.  I'm sorry, counsel.  I did not

3   hear you.

4          Okay.  All right, Mr. Lohr, you may proceed.

5          MR. LOHR:  And by way of introduction, Your Honor,

6   the interest rate that applies to a federal judgment is

7   determined by 28 U.S.C. 1961.  The Creditor, David Gottlieb,

8   who's also referred to as disbursing agent in different

9   documents, who filed proof of claim has attempted to apply a

10  contract rate of interest that was negotiated between Mr.

11  Gottlieb and the Debtor in a mutual release and settlement

12  agreement to the post judgment amount.

13         Courts have determined that negotiated or contract

14  rates of interest are applicable to the approval of interest of

15  pre-judgment amounts.  However, the Third Circuit has followed

16  its sister circuits in holding that parties may negotiate

17  around 28 U.S.C 1961 with regard to post-judgment interest

18  rates.  However, in order to do so, the parties must

19  demonstrate through clear unambiguous and unequivocal in their

20  language in their agreement in attention to do so.

21         In this case, the mutual release and settlement

22  agreements specifically provides for interest to accrue at the

23  contract rate of interest of up to 15 percent, up to the date

24  that the judgment is entered.  However, it makes no provision

25  for any approval of interest post-judgment.

1          In fact, the term post judgment does not even appear

2     in the settlement agreement.  I have five points I'd like to

3     make.  One, the first one being, the federal judgment rate of

4     interest is applicable to the judgment held by the disbursing

5     agent commencing on April 20th of 2012.

6          The second point is the merger doctrine served to

7     extinguish the contract rate of interest at the time the

8     judgment was entered.

9          My third point is the merger doctrine also serves to

10    preclude attorney's fees from accruing post judgment.

11         My fourth point, the parties did negotiate a contract

12    rate of interest that was applicable to the prejudgment period

13    only.

14         My fifth point is the applicable post-judgment

15    interest rate is 0.17 percent.

16         With regard to the first point, Your Honor, there's a

17    very recent case in the -- and it's the Third Circuit opinion.

18    It's certainly cited to in my objections.  *Sovereign Bank v.*

19    *Remi Capital, Inc*.  It's 49 F.4 360.  Quoting -- and it's a

20    very instructive case.  It interprets this very point that

21    we're here to argue today.

22         But in quoting from that case, Your Honor, in federal

23    money judgments, 28 U.S.C. 1961 governs the rate at which

24    interest accrues.  Other Third Circuit cases holding at post-

25    judgment interest is statutorily mandated for all judgments in

1   federal courts by 28 U.S.C. 1961, including *Dunn v. Hovic*,

2   which is a Third Circuit opinion from 1993.  13 F.3d 58.  And

3   also, *Pierce Associates, Inc. v. Nemours Foundation*.  Also a

4   Third Circuit opinion from 1988.  The cite on that is 865 F.2d

5   530.

6           Quoting from the Sovereign Bank case, which I will at

7   various times through my argument today.  As a general rule in

8   federal cases where jurisdiction is based on diversity of

9   citizenship, federal courts have held that post-judgment

10  interest is governed by the federal post-judgment interest

11  statute rather than by state law.

12          In the present -- and the Sovereign Bank Court cited

13  to *Allstate v. Climber* (phonetic), which is a Eastern District

14  of Pennsylvania opinion from 1994.  Also, *Feldman v.*

15  *Philadelphia Housing Authority*, also an Eastern District of

16  Pennsylvania opinion from January 12th of 1994.

17          Courts have held that in federal district court cases

18  where jurisdiction is based on diversity of citizenship, post-

19  judgment interest is governed by Section 1961 rather than by

20  state law.  That's also citing to *Tom Fed Savings Bank v.*

21  *Newtown Commons Associates*, which an Eastern District of

22  Pennsylvania opinion from 1989.  719 F. Supp 367.

23          The second point, Your Honor, the merger doctrine

24  served to extinguish the contract rate of interest at the time

25  that the judgment was entered.  The doctrine of merger provides

1    that quote,

2              "When a Plaintiff recovers a valid and final personal

3              judgment, his original claim is extinguished and

4              rights upon the judgment are substituted for it.  The

5              Plaintiff's claim is said to be merged into the

6              judgment."

7         And that's again the *Sovereign Bank* towards citing to

8    *In re Stendardo*, which is 991 F.2d 1089.

9         And in the Stendardo case, they refer to the

10   statement second section of -- second of judgment, section 18,

11   comment A, and quoting from the *Sovereign Bank* case,

12             "It is immaterial whether the judgment was rendered

13             upon a verdict or upon a Motion to Dismiss or other

14             objection to the pleadings or upon consent,

15             confession, or default.  A successful Plaintiff in a

16             contract action, for example, may no longer pursue

17             remedies on the basis of the underlying contract once

18             a judgment is entered on that claim.

19             Instead, he or she may maintain proceedings by way of

20             execution for enforcement of the judgment or maintain

21             an action upon the judgment.  Interest on a party's

22             defaulted obligation then ceases to approve at a

23             previously stipulated rate upon the entry of the

24             judgment.  At that moment, interest on the new

25             obligation, the judgment to be satisfied, approves

1          that the rate provided for by statute or court rule."

2          That's from the *Sovereign Bank* case at page 365.

3          My third point, Your Honor, the merger doctrine also

4    serves to preclude attorney's fees from accruing post-judgment.

5    In the *Stendardo* -- in *Stendardo*, which was a bankruptcy case,

6    the Court recognized the ability of parties to reflect in a

7    mortgage that certain obligations would survive a judgment.

8    And that's from page 1095 in *Stendardo*.

9          There, in the *Stendardo* case, Creditors argued that a

10   mortgage entitled them to recover certain post-judgment expense

11   from the Debtors notwithstanding the prior entry of a

12   foreclosure judgment in the Creditors favor.

13         The mortgage provided that upon default by the

14   Debtor, the Creditor was entitled to recover for the payment of

15   taxes and insurance premiums.  The Court decided, though, no

16   loanage appears in the mortgage at issue here that indicated

17   the party's intent to preserve the Debtors obligation to pay

18   the relevant taxes and insurance premiums beyond the date of

19   judgment.  Thus, the Creditors were not entitled to recover

20   expenses incurred post-judgment.

21         Courts have consistently held the doctrine of merger

22   and titles of mortgagee post-judgment to the legal rate of

23   interest rather than the rate specified in the mortgage.

24   Because the mortgage merges into the judgment, its terms

25   specify, and the contractual interest rate no longer exists to

1   bind the parties.  That's again from the *Sovereign Bank* case at

2   page 366.

3            Just as the mortgagees' rights to recover payment of

4   taxes and insurance premiums were premised upon a pre-judgment

5   document, meaning the mortgage, to the extent that the

6   disbursing agent, or Mr. Gottlieb, had any rights to collect

7   attorney's fees.  These rights were premised upon the pre-

8   judgment settlement agreement and released and because of the

9   merger doctrine, these rights no longer exist.

10            My fourth point, Your Honor, is that the parties did

11   in fact negotiate a contract rate of interest that was

12   applicable only to the pre-judgment period.  Some facts behind

13   the underlying case, Your Honor, which are important for the

14   Court to be aware of.  On September 15th of 2010, the

15   disbursing agent filed a complaint against Defendants, the

16   Debtor being one of them.

17            On August 23rd, nearly a year later, the disbursing

18   agent and the Defendants entered into a mutual release and

19   settlement agreement.  This is the contract that determines the

20   pre-judgment amount of interest that applies to the debt.  The

21   mutual release and settlement agreement is attached to the

22   order in this case.  And that -- I'm referring to the order

23   entered into the -- by the bankruptcy court in the Southern

24   District of California.

25            However, it only serves to provide the rate of

1  interest pre-judgment, as it is a contract that was negotiated

2  between the Debtor and the Creditor.  The only paragraphs in

3  the mutual release and settlement agreement that address the

4  approval of interest are in paragraphs four, 15, and 16.  And

5  all apply to pre-judgment interest.

6           The term post-judgment does not even appear in the

7  agreement at all.  Paragraph four of the settlement agreement,

8  which opposing counsel maintains provides the basis for the

9  post-judgment approval of interest, which it doesn't.  But

10  paragraph four is temporal, and it says,

11           "The accrued but unpaid interest shall become payable

12           upon; one, the service of notice of default on

13           Defendants as set forth in paragraph 16 indicating

14           Plaintiff's intent to move for entry of the

15           stipulated judgment."

16           So just looking at the first point, Your Honor, this

17  is a pre-judgment time period.  So it says the accrued but

18  unpaid interest that shall become payable.  And they're

19  referring to a pre-judgment time period of, you know, their

20  intent to move forward for an entry of a stipulated judgment.

21           The second item in paragraph four states, "The

22  passage of ten days thereafter without Defendants having cured

23  the deficiency."  Well, it's a standard settlement agreement,

24  Your Honor, where and they gave a ten-day period to cure and if

25  the defaulting party hasn't cured within ten days, as they

1  didn't in this case, the Movant is entitled for -- to move for

2  an entry of a judgment, which is indeed what happened.

3          So paragraph four referred to paragraph 16.

4  Paragraph 15 states that this agreement only applies to pre-

5  judgement interest, well, I'm saying that it does.  And I'm

6  quoting from paragraph 15.  "The accrued but unpaid interest

7  due at the time of filing the stipulated judgment."  Very

8  important language right there.  "At the time of filing the

9  stipulated judgment shall be calculated by adding $3,125 in

10 monthly interest beginning with the month of February 2009,"

11 again, a pre-judgment time period, "through the end of the

12 month in which the cure period as that term is defined below

13 expires."  And that was a direct quote from paragraph 15.

14         The final paragraph of the settlement agreement that

15 refers to interest, Your Honor, is paragraph 16, and that

16 defines the cure period.  And it says, the cure -- it says,

17         "In the event that Defendants fail to make any of the

18         monthly payments in accordance with the terms of this

19         agreement, disbursing agent, 'through his authorized

20         representative' may execute a declaration under oath

21         establishing as fact the deficient monthly payments

22         and the amount due from Defendants,"

23         Which is the declaration.

24         Upon one, there's two elements again.  The first

25 element is serving notice on the -- of the default on

1    Defendants by regular mail at the address of record in the

2    adversary proceeding indicating Plaintiff's intent to move for

3    entry of the stipulated judgment.

4            Again, a pre-judgment time period.  The intent of

5    them moving for stipulated judgment.  And two, the passage of

6    the cure period.  It's -- the agreement specifically says the

7    passage of ten days thereafter end "the cure period" without

8    Defendants having cured the deficiency.  The disbursing agent

9    may file the declaration and file or lodge the stipulated

10   judgment.

11           So paragraph four directs us to what time periods

12   need to elapse prior to a judgment being entered.  Paragraphs

13   15 and 16 define those time periods.  Both of those time

14   periods did indeed pass.  We're not disputing the fact that a

15   judgment was indeed entered.

16           What we are stating is the applicable interest rate.

17   And the cases that are out there do preclude the Movant from

18   applying a pre-judgment rate of interest to post-judgment,

19   again, 2819 -- 28 U.S.C. 1961 dictates that.

20           Now in the instant case, Your Honor, paragraph 2(b)

21   of the order that was entered in the Bankruptcy Court for the

22   Southern District of California states that on judgment upon

23   default under the settlement agreement, Defendants are hereby

24   directed and ordered to pay the judgement amount plus interest

25   from the date of entry of this order to the date of the

1   disbursing agents recovery of the judgment amount at the

2   maximum legal rate.  And that's directly quoted from the order.

3         The judgement amount is defined in paragraph 2(a) and

4   that amount is $264,416.68.  As set forth in the *Sovereign Bank*

5   case, Your Honor, in federal money judgments 28 U.S.C. 1961

6   governs the rate at which interest accrues.  This is what sets

7   the maximum legal rate.  I'm emphasizing maximum legal rate,

8   because that's the language directly from the order that

9   entered the judgement in the case in the Bankruptcy Court for

10  the Southern District of California.

11        Again, the *Sovereign Bank* has -- says that we join

12  our sister circuits who have addressed the question and holding

13  that parties may contract to a rate of post-judgment interest

14  by demonstrating through clear, unambiguous, and unequivocal

15  language in their agreement and intention to do so.

16        Now, opposing counsel's going to argue that since the

17  order was attached -- the underlying judgment was attached or

18  settlement agreement was attached to the order, that that

19  reflects the party's intention to do so.  But again, the words

20  post-judgment do not appear anywhere in the settlement

21  agreement and nor does the order incorporate by reference the

22  settlement agreement.

23        Again, the *Sovereign Bank* case says that Court's

24  interpreting parties attempting to have an interest rate other

25  than the federal judgment interest rate apply post-judgment

1    have held that unless the parties underlying agreement

2    specifically references post-judgment, the federal judgment

3    rate of interest applies.

4         There's an interesting case of the Eastern District

5    of Pennsylvania.  It's a 2021 case.  *Talen Energy Marketing v.*

6    *Aluminum Shapes.*  And where the Court stated,

7         "Particularly persuasive are the decisions of several

8         circuit courts that have determined that a

9         contractual provision must explicitly refer to post-

10        judgment interest in order to override Section 1961."

11        And in reliance to that, Your Honor, they refer to

12   the *Westinghouse Credit Corp v. D'Urso* case.  It's a Second

13   Circuit case from 2004.  The cite is 371 F.3d 96.  All these

14   cases, Your Honor, are identified within my objection.  In the

15   *Westinghouse* case, Your Honor, the Court applied -- they were

16   applying a federal rate where contractual language stated that

17   a different interest rate would apply.

18        Quoting from the case, the underlying instrument that

19   the Movant in that case stated formed the basis for applying

20   the negotiated interest rate post-judgement, was from the date

21   payment was due to the date payment is made.  Again, nearly

22   identical language to what we have in our order.

23        In that case, the Court found that they failed to

24   satisfy the requirement to apply post-judgment interest to the

25   judgment.  Another -- a very good case, it's a case out of

1  Kentucky, which is in the Sixth Circuit of -- a 2012 case, is

2  *Jack Henry & Associates v. BSC.*

3          In that case, holding -- there was a holding that a

4  provision stating -- I'm quoting from the case, "Amounts

5  outstanding after the due date are subject to an interest

6  charge today of payment."  Again, very similar to what the

7  order states in our case.  And our case is that we'll pay

8  interest at the maximum legal rate until payment is made.

9          Well, in the *Jack Henry* case, the Sixth Circuit held

10 that it was insufficiently clear to displace the federal rate

11 as set forth in 1961.  Other courts have also ruled on language

12 very similar to the language found in the order in this case.

13 And another one being, *Johnson v. Riebesell*, which is a Tenth

14 Circuit opinion from 2009, 586 F.3d 782.

15         Within that case, the underlying instrument that the

16 Movant claimed provided the basis for their -- the post-

17 judgment interest to be something other than the federal rate,

18 the language was upon default and acceleration.  The amount

19 then due on the note shall accrue interest until payment.

20 Again, until payment.  At the rate of 24 percent per annum or

21 the highest rate permitted by law, whichever is less.

22         The Court in that -- in the *Riebesell* case found that

23 there was not clear and unambiguous language specifying a post-

24 judgment interest rate.

25         Finally, Your Honor, a Second Circuit opinion from

1    2010, FCS Advisors v. Fair Finance Company.  The holding in

2    that case was that 1961 applied where the party's agreement did

3    not specify that the stated interest rate applied to either

4    judgments or judgment debts.  Again, very similar to our case.

5              Your Honor, my fifth and final point, the applicable

6    post-judgment interest rate is 0.17 percent.  28 U.S.C. 1961

7    sets forth,

8                   "such interest shall be calculated from the date of

9                   the entry of the judgment at a rate equal to the

10                  weekly average one-year constant maturity treasurer

11                  yield as published by the board of governors of the

12                  federal reserve system for the calendar week

13                  preceding the date of judgment."

14             Your Honor, in this case, the judgment was entered on

15   April 20th of 2012 in the amount of $264,415.68.  That's in

16   Exhibit 2 to my objection.  The weekly average one-year

17   constant maturity treasurer yield in affect as of April 13th,

18   2012, which is one week before, is 0.17 percent.  And I'll

19   direct the Court's attention to Exhibit 4 that was attached to

20   my objection.  If you're looking at the PDF pages, that's 42

21   through 44 of 56.

22             The proper amount of proof of the claim, Your Honor,

23   is as of August 2nd, 2022, which is the date the Debtors

24   bankruptcy case was filed, there's $232,632.79.  The basis for

25   my calculations is found in paragraph 22 through 29 of my

1    objection.

2              And for the foregoing reasons, Your Honor, I ask the

3    Court to enter an order that this allows proof of claim number

4    4 as filed.  Thank you.

5              THE COURT:  Okay.

6              Counsel for the Claimant?

7              MR. BARNES:  Good afternoon, Your Honor.  Thomas

8    Barnes for David Gottlieb here.

9              Just by way of historical background, I'll address

10   Mr. Lohr's five contentions in a moment.  In 2009, I believe,

11   the parties entered into this agreement whereby the $250,000

12   invested in the bankrupt out in California would be repaid by

13   Mr. Higgins, the Debtor, pursuant to this agreement.  And

14   provided for interest rate of 15 percent is set forth in

15   paragraph four.

16             There was a default as counsel states and the

17   agreement for -- provided for the entry of judgment, and the

18   judgment was entered by the Court on default.  And the judgment

19   was by agreement and it's pursuant to and attached to and made

20   a part of an order signed by an Article III judge in the Ninth

21   Circuit in the Southern District of California.  It was 12

22   years ago.

23             There's been no -- there was no request then to open

24   or strike the judgment.  There was no appeal taken from the

25   judgment.  The judgement has just been left undisturbed out

1   there since.  That same year, in other words, 2012, my client

2   transferred that judgment to Chester County, and he's been

3   trying to execute on a judgment since then as you know.

4         So it's important to note at this point, Your Honor,

5   it's actually crucial, actually that this judgment before you

6   is not an appeal from a lower court that's being interpreted by

7   an appellate court or by the district court.  It's not an

8   appeal from a bankruptcy court.  It's a judgment that was baked

9   in another circuit years ago.

10        There was no -- in Chester County, there was no

11  request to open or strike the judgment made by the Debtor.  And

12  there was never any dispute raised about the applicable rate in

13  the first or the second bankruptcy case before Your Honor here

14  in this court.

15        So now, we're ten years out, about 13 years since the

16  default.  And the main point I'd like to make today, Your

17  Honor, is that this court respectfully lacks the power to

18  disturb the judgment entered in the Southern District of

19  California.  Another judicial circuit.  The doctrine of --

20        THE COURT:  Well, is somebody -- wait a minute.

21  Counsel, is somebody asking me to vacate the judgment or to --

22        MR. BARNES:  No.

23        THE COURT:  -- interpret the judgment?

24        MR. BARNES:  We're asking you to modify it --

25        THE COURT:  I'm not vacating --

1          MR. BARNES:  -- Your Honor.

2          THE COURT:  No, they're asking me to interpret the

3    judgment.  What does it mean?  And I'm not saying --

4          MR. BARNES:  Well, if you take --

5          THE COURT:  That's --

6          MR. BARNES:  Yeah.

7          THE COURT:  I don't think they're asking me to vacate

8    it.  They're asking me to do anything else.  I don't think any

9    of those appeals where there was a dispute of the interest rate

10   that anybody asked any court to vacate the judgement.  They

11   were simply asking the Court to interpret what that judgment

12   meant with respect to interest.

13          And are you telling me that some California Court has

14   already opined or has ruled on what that interest rate is?

15          MR. BARNES:  No, I'm telling you that you -- this

16   court lacks the power to modify this judgment.

17          THE COURT:  I'm not -- counsel, I'm not modifying the

18   judgment.  Nobody's asking me to modify the judgment.  The

19   judgment is what the judgment is.  The judgment states what the

20   judgment is.  Somebody is now asking me to interpret what I

21   think the judgement means in this case.  And unless somebody

22   went to another court and asked them to interpret, I'm not --

23   was that precise issue raised with another court.  If it was,

24   then that's a whole different issue.  But if wasn't, I'm not

25   vacating, overruling, or doing anything else.

1          MR. BARNES:  That was in regard to the Debtor's

2   argument about merger, Your Honor.  In the Ninth Circuit, there

3   is a holding by the Ninth Circuit Court of Appeals from the

4   year 2006, in which it is held that a judgment may incorporate

5   an agreement by reference.  And when that occurs, the agreement

6   is merged into the judgment.  Perhaps that's the wrong term.

7   But it becomes part of the judgment.

8          So that -- in this case, the agreement that's

9   attached to the Southern District of California's order, all

10  those terms are a part of it and none of it is merged into the

11  judgment.  Therefore, the language regarding the interest rate

12  in the settlement agreement is part of that judgement.  It was

13  not merged and did not go away.

14          THE COURT:  Okay.

15          MR. BARNES:  I cite that case --

16          THE COURT:  So then that's --

17          MR. BARNES:  -- in section three of my --

18          THE COURT:  That's --

19          MR. BARNES:  -- it's 452 --

20          THE COURT:  Counsel.

21          MR. BARNES:  -- F.3d 1126.

22          THE COURT:  So that's a different issue for me.  The

23  issue is, when applying that judgment, what you're saying I

24  should go by the Ninth Circuit rules.  Mr. Lohr's apparently

25  saying that it's governed by the Third Circuit rules.  And in

1   the Third Circuit, a -- the documents merge into the judgment.

2   And then under the Third Circuit standard, I look to specific

3   language to see what happens to interest rate, attorney fees,

4   all of those things the Third Circuit has said.  There's some

5   specific requirements for them to survive mergers.

6          Are you telling me the Ninth Circuit has a different

7   rule and that's what I should be applying?

8          MR. BARNES:  I'm -- I cited a case, Your Honor, in

9   section -- my reply to paragraph three of the Debtors

10  objection.  The case is *Reno Air Racing Association, Inc. v.*

11  *McCord,* 52 F.3d 1126, a 2006 case.

12         THE COURT:  Okay.  And that case says what?

13         MR. BARNES:  It says, as I said that the settlement

14  agreement, its terms -- because it was expressly incorporated

15  in the terms of the Court's judgment, it is a part of it.  And

16  no term of the settlement agreement goes away.  Nothing merges

17  into the judgment.  The judgment is the order plus the

18  settlement agreement.

19         THE COURT:  Okay.  Okay.  And it says explicitly

20  included.  And what does explicitly included mean?

21         MR. BARNES:  Well, that's not the term.  The Court

22  uses -- the --

23         THE COURT:  Well, what is the term the Court uses?

24         MR. BARNES:  The --

25         THE COURT:  I thought that's what --

1          MR. BARNES:  The Ninth Court held that when a court

2   in the Ninth Circuit enters an order for judgment and

3   incorporates by reference the settlement agreement by the

4   parties, that settlement agreement is part in parcel of the

5   order.

6          THE COURT:  Okay.  So what do by reference mean?

7          MR. BARNES:  Well, it's a doctrine used in contract

8   law and pleadings.  That at least in Pennsylvania practice,

9   when you make an averment that, you know, the lease at issue is

10  incorporated by reference herein as if -- and made a part here

11  of is more full -- as if more fully set forth.  It's as if the

12  document was restated.  It's incorporated and merged into it.

13         THE COURT:  Okay.  And do they have to explicitly

14  state that, or they just -- how do they do that?

15         MR. BARNES:  They just language to the effect that

16  it's incorporated by reference and made a part hereof.

17         THE COURT:  Okay.  And you're saying the order in --

18  the judgment did that?

19         MR. BARNES:  Correct.

20         THE COURT:  Okay.  Okay.

21         MR. BARNES:  So if we accept that, then really we're

22  left to examine the language in paragraph four of the

23  settlement agreement.  And Mr. Lohr has very articulately and

24  elegantly explained that term to the Court.  It speaks for

25  itself.  It's right there in black and white.  My client's

1    position is very simply, at that annual rate of 15 percent

2    carries through all the way to today.

3              THE COURT:  Okay.  Okay.

4              MR. BARNES:  That -- that's my argument in a

5    nutshell, Your Honor.  That is the essence of it.  15 percent

6    from 2012 until today.  And the numbers are in the proof of

7    claim.  There's about a total of --

8              THE COURT:  So I --

9              MR. BARNES:  -- $600,000.

10             THE COURT:  So the order I thought was a one -- that

11   does not specifically state that the agreement is incorporated

12   by reference.  You're telling me that I must have the wrong

13   order, because --

14             MR. BARNES:  Well, you're -- you want to go to page

15   2.

16             THE COURT:  Of the order?

17             MR. BARNES:  Yeah, yeah.

18             THE COURT:  Okay.  One moment.

19             MR. BARNES:  Three-page order.  Two-page order.

20             THE COURT:  Okay.  And page two of the order says

21   what?

22             MR. BARNES:  It says pursuant to the mutual release

23   and settlement agreement entered into and bound between David

24   Gottlieb and the Defendants, including the Debtor here.

25   Attached hereto as Exhibit 1.  And upon the declaration --

 1                THE COURT:  Okay.

 2                MR. BARNES:  -- et cetera, which evidence is the

 3      default and failure of Defendants to comply in considering

 4      proper service of the declaration, et cetera. and good cause

 5      appearing.  Therefore, this court renders judgment as follows.

 6      And paragraph one -- basically, the judgment's entered against

 7      Mr. Higgins.

 8                THE COURT:  Well, it just cites to it as saying

 9      attached hereto for the default and -- okay.  All right.

10                MR. BARNES:  Yeah.

11                THE COURT:  I'll read it for what it says.

12                MR. BARNES:  Okay.  So it's incorporated, Your Honor.

13      And that's the basis for --

14                THE COURT:  But counsel, you just said when it's

15      incorporated, it specifically says incorporated herein by --

16      incorporated herein and included.  But it didn't say that

17      precise word.  It just says attached as exhibit --

18                MR. BARNES:  No.

19                THE COURT:  -- whatever.

20                MR. BARNES:  Yeah, you're right.

21                THE COURT:  Of how many -- it does not state that --

22                MR. BARNES:  But I'm not sure that that says --

23                THE COURT:  No.  That's what I was trying to figure

24      out.  Did it specifically say that, or it was referenced in

25      connection with the default agreements or the proof of the

1    default and all those other things that it said occurred.

2            All right.  I'll read the order.  I mean --

3            MR. BARNES:  Okay.

4            THE COURT:  -- the question for me, counsel, is, you

5    now, what law am I going -- am I going to use the Third Circuit

6    that says this is what happens when a judgment is entered?  Or

7    do I look to the Ninth Circuit to say what happens when a

8    judgment is entered?  If it's a Ninth Circuit, what does it

9    mean when it says it's incorporated?  Does it just have to be

10   attached?  Does it have to be referenced?  Does it have to

11   explicitly state?

12           And you're saying the case in the *Reno* case tells me

13   -- Reno Air tells me what that means and that it says it was

14   attached and therefore is incorporated by reference.  And what

15   does that mean?  Incorporated by reference.  Do you just attach

16   it and that it is?  Or it has to explicitly talk about what

17   that means?

18           So that's going to be the first question for me, is

19   what law am I looking to to decide what this judgment means.

20   And if it's the Ninth Circuit, then I have to go back and say

21   what does the Ninth Circuit say?  How the -- you know, is it

22   attached with something?  Do you have to do something more than

23   that?  Do you have to say what it is?  And even if it's

24   attached, what does that mean?  Does it mean, like, in the

25   Third Circuit, where you have to -- even if the agreement is

1    incorporated.

2           Does that mean that it doesn't merge?  Or does it

3    have to explicitly state, because the Third Circuit says, you

4    know, it has to explicitly state that it applies to post-

5    judgment in order to survive.  I don't know.  You're saying on

6    the *Reno* it doesn't have to and that as long as it's

7    referenced, those terms don't merge, and they continue.  I

8    don't know.  I -- that's sort of where my starting point's

9    going to be, is what law am I applying to this judgment?

10          So I'm not vacating.  I'm not annulling.  I'm not

11   doing anything.  I have somebody's judgement and okay, what do

12   I think that judgment means in terms of those fees and interest

13   rates.  That's it.  And since no other court has addressed it,

14   I clearly have jurisdiction to address an objection to the

15   interest rate and attorney fees.

16          And so, that requires me to first figure out what law

17   am I applying?  Is it the case law in the Ninth Circuit where

18   the judgment was entered?  Or is it the case law in the circuit

19   where the judgment was transferred and is being executed upon?

20   I don't know the answer to that.  Let me just tell you, I don't

21   know the answer.

22          But once I get an answer, if I apply the Ninth

23   Circuit, then I'll figure out what the Ninth Circuit means by

24   not merged or what happens.  And if I decide it's the Third

25   Circuit, I'll look at what the Third Circuit says.  So that's

1    how I'm looking at.

2            Unless counsel, you're now saying you don't believe I

3    have jurisdiction to address an objection to a proof of claim

4    that's based on a judgment?

5            MR. BARNES:  Well, there's a doctrine of res

6    judicata, Your Honor.  It's kind of the 800 --

7            THE COURT:  Well, wait a minute.  Where was --

8    counsel, where was the objection to the interest rate

9    adjudicated?  What's the res judicata?  Did somebody --

10           MR. BARNES:  There was no objection adjudicated, Your

11   Honor.

12           THE COURT:  Well, this -- well, that's the point.  So

13   how is that res judicata if that precise issue was never

14   litigated by anyone?  There isn't another court who has made

15   that decision --

16           MR. BARNES:  Your Honor, it's included in the

17   judgment.

18           THE COURT:  Excuse me?

19           MR. BARNES:  It's included in the terms of the

20   judgment.

21           THE COURT:  But that's the point.

22           MR. BARNES:  The law of that case.

23           THE COURT:  No, the judgment was entered.  There is a

24   request as to interpretation of that judgment.  No court, as

25   far as you're telling me, has decided what the interest rate is

1  under the terms of that judgment.  Your argument is that on the

2  California law and the Ninth Circuit, it is clear that the

3  interest rate is what was set forth in the agreement.  And if

4  you're correct, then that's the judgment rate.

5         If I interpret California law to say no it wasn't,

6  then that would be what I think is the interest rate.  Nobody

7  has asked anybody to decide what the appropriate judgment rate

8  is, so there's no res judicata anything.  The judgment was

9  entered.  The -- there's no issue that the base amount is what

10  it is.

11         There's somebody requesting an interpretation of the

12  remainder as to interest rates and attorney fees.  And no court

13  has said anything about that.  And it's an objection to the

14  claim on the basis that the application or interpretation of

15  the judgment by the judgment Creditor, you're applying the

16  wrong interest rate and attorney fees don't apply.  And I have

17  to figure out if that's correct or not.

18         If I look at it and say on the California law, they

19  are allowed to 15 percent in the attorney fees, boom, that's

20  it.  If I look at it and say on the California law they're not.

21  That California law, my reading of the law is this, that's what

22  you get.  Or if I say Third Circuit applies.  So there's no res

23  judicata, collateral estoppel anywhere in this issue before me.

24         I'm not -- I am not addressing any underlying issue

25  that was resolved by this -- by the Court who entered the

1    judgment.  The Court entered the judgment and said what it

2    said.  And I'm going to try to interpret what that means.  I'm

3    not saying the judgment goes away, because that would be res

4    judicata, collateral estoppel, because judgment has already

5    been entered.

6            So I do believe I have the authority to figure out

7    what the correct interest rate is.  Is it the amount that was

8    set forth in the settlement agreement that was attached to the

9    order?  Or is it some number -- some other method for

10   calculation?  And is it -- and does it include attorney fees?

11   Nobody's ever decided that.  So that's how I'm looking at it.

12           So is there anything else that anybody thinks that I

13   -- Mr. Lohr, you never said -- and I -- Mister -- counsel for

14   the Creditor has said that he believes that I should be looking

15   at Ninth Circuit law.

16           MR. LOHR:  Uh-huh.

17           THE COURT:  And you never addressed that, because

18   this is I guess what --

19           MR. LOHR:  I will, Your Honor.  I -- if I might

20   address some of the points he made briefly.

21           THE COURT:  Well, wait, wait.  I don't know if he was

22   finished.  I --

23           MR. LOHR:  Okay.

24           THE COURT:  -- took him off his tangent.  I went on a

25   tangent.

1              Mister -- I'm sorry, counsel.  Let me go back,

2   because --

3              MR. BARNES:  My name is Tom Barnes, Your Honor.

4              THE COURT:  Mr. Barnes, I apologize.  Were you

5   finished?  Is there anything else?  Because what I'm hearing

6   is, you're saying on the California law, once that settlement

7   was attached, the settlement survived and whatever it provided

8   for interest rates and attorney's fees survived and there's no

9   merger -- and no merger doctrine.  And therefore, your claim is

10  valid, and I should overrule the objection, correct?

11             MR. BARNES:  I think you've got the gist of my

12  argument, Your Honor.

13             THE COURT:  Okay.  Anything else you want to add?

14             MR. BARNES:  No, Your Honor.

15             THE COURT:  Okay.  All right, Mr. Lohr.

16             MR. LOHR:  Yes, Your Honor --

17             THE COURT:  You want to respond?

18             MR. LOHR:  I would like to and it will be brief.

19  Your Honor --

20             THE COURT:  Yes, please.

21             MR. LOHR:  -- if the Movant would wish --

22             THE COURT:  Go ahead.

23             MR. LOHR:  -- to maintain the 15 percent interest

24  rate, they could have chosen to not enter a judgment.  And that

25  was the only -- the only relationship dictating the amount due

 1   between the parties would indeed be governed by the settlement

 2   agreement mutual release.  They didn't do that.

 3          They chose to become a judgment Creditor.  They

 4   entered a judgment.  There's no question about that.  With

 5   regards to --

 6          THE COURT:  Yes, but Mr. Lohr, the question is, is

 7   how do -- they're argument is that judgment as entered in

 8   California, the terms of the settlement agreement did not merge

 9   and in fact was adopted by that judgment and therefore, that's

10   how you calculate interest and inclusion of attorney fees.

11          So my question to you is --

12          MR. LOHR:  Uh-huh.

13          THE COURT:  -- is -- are you -- do you disagree,

14   agree, that the Ninth Circuit, the law in the Ninth Circuit is

15   that that judgment did not -- the settlement did not merge into

16   the judgment and was simply the judgment itself, I guess for a

17   lack of a better description.

18          MR. LOHR:  I -- and to answer Your Honor's question,

19   I disagree, and my basis is found in paragraph 14 of the

20   objection I filed.  And in that, I state that the *Sovereign*

21   *Bank* adopted the position taken by other circuits.  And then I

22   have an indented portion that is a direct quote from the

23   *Sovereign Bank* case, which is our Third Circuit opinion.

24          And the Court states, "If parties want to override

25   the general rule on merger and specify a post-judgment interest

```
 1   rate, they must express such intent through clear, unambiguous,

 2   and unequivocal language."

 3          And then that's --

 4          THE COURT:  I get that.  That's the Third --

 5          MR. LOHR:  I --

 6          THE COURT:  -- Circuit.  But what does --

 7          MR. LOHR:  Your Honor, if --

 8          THE COURT:  -- the Ninth Circuit state?

 9          MR. LOHR:  If I might?

10          THE COURT:  I'm sorry, go ahead.  Uh-huh.

11          MR. LOHR:  They're citing to Banque Nationale de

12   Paris v. Broadway Associates, 248 2.d, and that's a New York

13   appellate division case.  Then within the same quote in

14   paragraph 14, Your Honor, this is, again, the Sovereign Bank

15   Court stating the Fifth, Seventh, Ninth, and Tenth Circuits

16   have concluded the same.  And then they see In re blah, blah,

17   blah.

18          THE COURT:  Well, what's the --

19          MR. LOHR:  The Ninth Circuit case that they rely upon

20   is indeed Citicorp Real Estate, Inc. v Smith.  That's 155 F.3d

21   1097.  That's a 1998 case out of the Ninth Circuit.  That is

22   cited within the case we're relying upon for the position that,

23   to the extent you wish to negotiate around the post-judgment

24   federal rate of interest.  You have to do that by the

25   unambiguous, unequivocal, and clear language.  So --
```

1          THE COURT:  But then --

2          MR. LOHR:  -- the case that Mr. Barnes is relying

3     upon, the *Reno Air Racing v. McCord* is a completely different

4     issue, Your Honor.  In the case, the Plaintiff -- the Movant

5     was an air show that held -- or an air racing association that

6     held a yearly air racing event.  They would have airplanes come

7     into a place in Nevada.  And at this event, they would sell

8     merchandise, of course, t-shirts, hats, other memorabilia.

9          They noticed that one of their vendors attending

10    their event that was outside the gates was selling memorabilia

11    with a very similar logo to it.  So in that case, what the

12    Plaintiff did was, they filed a complaint in the federal

13    district court in the Ninth Circuit alleging infringement.

14         Attached to the complaint was Exhibit F and it --

15    which contained a picture of the t-shirt design sold by the

16    Defendant, which depicted an image similar to the logo used by

17    the Plaintiff.  The same day that they filed a complaint, the

18    Plaintiff filed a ex-parte application for a temporary

19    restraining order pursuant to federal rule civil procedure 65

20    in a Motion for a Preliminary Injunction.

21         After an ex-parte hearing, the Court entered a

22    temporary restraining order in joining the Defendant from

23    engaging and making, manufacturing, using, distributing,

24    selling any goods which bared the trademark set forth in

25    Exhibit F.  The Defendant, the person who was selling the

1  memorabilia they claimed illegally, appealed the decision.  And

2  his position was that the temporary restraining order

3  referenced an outside document, which was Exhibit F attached to

4  the complaint.

5       He said pursuant to Rule 65(d), you can't do that.

6  And Rule 65(d) said this is really a completely different

7  issue, Your Honor.  65(d)(1)(c) sets forth that any order

8  entered for the scope of any injunction or restraining order,

9  every order granting this injunction or ever restraining order

10 must describe in reasonable detail and not by referring to the

11 complaint or other document.  The act or acts restrained are

12 required.

13      So it's really -- the argument in *Reno* -- in the *Reno*

14 case was the Defendant arguing, hey, court, you improperly

15 allowed a document in that was in contravention of a rule that

16 dictates, you know, the issuance of a temporary restraining

17 order.

18      And in that opinion, Your Honor, it's interesting to

19 note, the Court said, we emphasize, however, that incorporation

20 by reference should be the rare exception rather than the rule.

21 No way -- nowhere do they ever say that whenever an agreement

22 is attached to an order that it's incorporated by reference.

23      They did make an exception in this case.  And indeed,

24 they said at the end of the day that the temporary restraining

25 order did turn into a permanent injunction.  But it's, you

1  know, really comparing apples and oranges here.

2        And so, from that, I think they're setting forth a

3  very different standard.  And again, I think the opinion that -

4  - to the extent the Court wants to pay attention to a Ninth

5  Circuit opinion, I would again direct them to *Citicorp Real*

6  *Estate v. State*, which is 155 F.3d 1097.  That's the Ninth

7  Circuit opinion from 1998.

8        THE COURT:  Okay.  We believe that the Ninth Circuit

9  is the same standard as in the Third, so it wouldn't matter

10 which one I picked?

11       MR. LOHR:  I think that's -- yes, that is the case,

12 Your Honor.

13       MR. BARNES:  I disagree, Your Honor.

14       THE COURT:  That's your argument?

15       MR. LOHR:  It is, yeah.

16       THE COURT:  Okay.

17       MR. LOHR:  As say --

18       MR. BARNES:  I disagree.

19       MR. LOHR:  -- standard used by our sister circuits.

20       THE COURT:  Okay.  Mr. Barnes, you'll get your turn.

21 You'll get your turn, okay?

22       MR. BARNES:  Well, I'm all excited.  I want to talk

23 now.

24       THE COURT:  Well, that's not how it works.

25       Mr. Lohr, are you done?

1          MR. LOHR:  I'm finished, Your Honor.

2          THE COURT:  Okay.  All right, Mr. Barnes.  Then you

3   believe that Mr. Lohr is wrong?  That *Citicorp v. Smith* does

4   not apply to the present situation and that --

5          MR. BARNES:  Yeah, I do, Your Honor, with all --

6   yeah.  With all due respect --

7          THE COURT:  Okay.

8          MR. BARNES:  -- to my distinguished colleague, I do

9   disagree.  I just refer the Court to the opinion itself and

10  particular pages 1107 to 1108.  That's all I'll say.

11         THE COURT:  Pages 1107 to 1008?

12         MR. BARNES:  Yes.

13         THE COURT:  So you're -- so basically you're telling

14  me the Third Circuit misinterpreted the *Citicorp* when it

15  said --

16         MR. BARNES:  No.  No.  That's not what you asked me.

17  I'm saying that the Ninth Circuit treats the issue differently.

18  That's all.

19         THE COURT:  Any my question to you is, when the Third

20  Circuit says and the circuits who have held the same, including

21  this *Citi* case, that they were either referring to something

22  else as a merger, or they were incorrect.  It's going to be one

23  or the other.

24         MR. BARNES:  Well, the Smith case didn't address the

25  merger issue.  The Smith case addressed the level of

1    specificity required to -- when you're talking about a post-

2    judgment rate of interest.  That's all.

3              And the Third Circuit --

4              THE COURT:  Okay.

5              MR. BARNES:  -- has a much stricter standard than the

6    Ninth Circuit.  That's the only point I'm trying to make.

7    You'll see that when you read the opinion, Your Honor.

8              THE COURT:  Okay.  Anything further from anyone else

9    with respect to the --

10             MR. LOHR:  I have nothing further, Your Honor.

11             THE COURT:  -- because clearly, I'm going to take

12   this under advisement.  I don't -- you know, I have to first

13   figure out, you know, what circuit I'm following, you know, for

14   when a judgment is enforced.  Is it the case of -- where the

15   Debtor and what that -- I would think it was where it was

16   entered that would say what -- what the judgment means, at

17   least to me.  But don't hold me to that.  You know, if you want

18   to know a judgment in the Ninth Circuit is, I would see what

19   the Ninth Circuit says.  Did -- and then go from there.  It

20   would seem to me, but I don't know.  But that's the first

21   issue.

22             And then once I figure out what circuit I'm

23   following, I need to look at the cases to see what that circuit

24   says about this specific judgment and what's required for

25   determining what happens to provisions of a settlement

1   agreement.  And then from there, that'll be pretty easy for me

2   to decide whether the -- it's 15 percent or the federal

3   judgment rates and whether attorney fees are included or not.

4         So -- unless the parties have anything further, I

5   think I have an idea of where I'm -- what I need to address.  I

6   don't know the answer, but I pretty much know what I need to

7   address.

8         Anything further?

9         MR. LOHR:  I have nothing further.  It's Robert Lohr,

10  I have nothing further.

11        THE COURT:  Mr. Barnes, anything further?

12        MR. BARNES:  No, Your Honor.

13        THE COURT:  All right.  Okay.

14     (Proceedings adjourned)

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


      I hereby certify that the foregoing is a true and
correct transcript from the electronic sound recording of the
proceedings in the above-entitled matter.



*John Buckley*
_____
John Buckley, CET-623
Digital Court Proofreader