**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| Robert L. Higgins, | : | |
| Debtor. | : | Bankruptcy No. 22-12021-MDC |

# <u>MEMORANDUM</u>

## I.    INTRODUCTION

Robert Higgins (the "Debtor") commenced the above-captioned chapter 13 bankruptcy case on August 2, 2022.  On August 15, 2022, the Debtor filed his schedules and statements.[1] The Debtor's Schedule A lists a property interest in the Debtor's residence located at 100 Applegate Drive, West Chester, Pennsylvania (the "Property"), which interest the Debtor values at the full fair market value of $900,407.88.[2]  The Schedule A/B represents that the Property is owned by the Debtor and his spouse.  The Debtor's Schedule C claims an exemption in the Property (the "Claimed Property Exemption") for 100% of its fair market value.

Pending before the Court is the objection (the "Exemption Objection")[3] of the Donald Parker Separate Property Trust (the "Parker Trust" and together with the Debtor, the "Parties") to the Claimed Property Exemption.  The Debtor filed a response to the Exemption Objection (the "Response"),[4] and on January 5, 2023 the Court held a hearing (the "Hearing"), after which the

---

[1] Bankr. Docket No. 13.

[2]  On September 5, 2023, the Debtor filed an amended Schedule A/B valuing the Property at $946,846.98. Bankr. Docket No. 155.

[3] Bankr. Docket No. 69.

[4] Bankr. Docket No. 82.

Court took the matter under advisement[5] and directed the Parties to submit post-Hearing briefs (each, a "Post-Hearing Brief") on certain issues, as discussed infra.  On February 10, 2023, the Parties each submitted their Post-Hearing Briefs.[6]

For the reasons discussed herein, the Court will overrule the Exemption Objection because it is procedurally deficient and its underlying basis for objection is time-barred.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Transfer of the Property During the Debtor's Prior Bankruptcy Case

The basis for the Parker Trust's Exemption Objection is grounded in events that occurred in the Debtor's 2016 bankruptcy case (the "2016 Bankruptcy Case").  In the Debtor's Schedule A/B in the 2016 Bankruptcy Case, he disclosed that he alone was the fee simple owner of the Property, which at that time he valued at $613,464.30.[7]  His Schedule C did not claim an exemption with respect to the Property.[8]  On August 18, 2016, the chapter 13 trustee held and concluded the meeting of creditors (the "§341 Meeting") pursuant §341 of the United States Bankruptcy Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code").

Thereafter, on October 12, 2016, the Debtor executed a Quitclaim Deed of the same date, transferring the Property from himself, as Grantor, to himself and his wife, Maryna E. Higgins ("Mrs. Higgins"), as Grantees (the "Transfer").[9]  The Quitclaim Deed provides that no consideration was paid for the Transfer.  The deed was recorded with the Chester County,

---

[5] All matters in this case were held in suspense from June 20, 2023 through September 7, 2023 due to the criminal proceedings pending against the Debtor and the possible implication of his rights under the Fifth Amendment of the United States Constitution.  The matter came back under advisement as of that date.

[6] Bankr. Docket Nos. 92, 93.

[7] Bankr. Case No. 16-13543, at Docket No. 13.  The Debtor amended his Schedule A/B on August 9. 2016, but did not make any amendments with respect to the Property.  Id. at Docket No. 30.

[8] Id. at Docket No. 14.

[9] Id. at Docket No. 81, at Exhibit A.

Pennsylvania Recorder of Deeds (the "Recorder of Deeds") on November 1, 2012.[10]  The Debtor

did not amend his Schedule A/B to reflect the Transfer, nor did he file anything in the 2016

Bankruptcy Case seeking authority to make the Transfer or to notify parties-in-interest or the

Court that the Transfer would be or had been made.

The Debtor's chapter 13 plan in the 2016 Bankruptcy Case was confirmed on November

7, 2019,[11] and on July 2, 2021 the Court entered an order granting the Debtor a discharge.[12]  The

Parker Trust's claim against the Debtor, however, was not discharged, based on the Debtor's

failure to schedule it or provide notice to the Parker Trust of the 2016 Bankruptcy Case.[13]

### B.    The Parties' Arguments

The Debtor's stated basis for the Claimed Property Exemption is *Napotnik v. Equibank &

Parkvale Sav. Ass'n*. 679 F.2d 316, 319 (3d Cir. 1982).  Based on this, and the Debtor's

statement in his Response that *Napotnik* "is commonly cited by Debtors in Pennsylvania

claiming the state exemptions pursuant to 11 U.S.C. §522(b)(3)," the Court understands the

Debtor to be relying on *Naptonik's* conclusion that under Pennsylvania law, creditors of either

spouse cannot acquire, by judgment, an enforceable lien on property held as tenants by the

entireties, but rather, "at most, a creditor of either spouse may obtain a presently unenforceable

lien upon that spouse's expectancy of survivorship – a lien that becomes enforceable only when

the other spouse dies."  *Id.* at 319 (citing *Amadon v. Amadon*, 59 A.2d 135 (Pa. 1948) and *Biehl

v. Martin*, 84 A. 953 (Pa. 1912)).

---

[10] Id.

[11] Id. at Docket No. 193.

[12] Id. at Docket No. 236.

[13] Id. at Docket No. 265.

The Parker Trust objects to the Claimed Property Exemption because (i) the Debtor made

the Transfer of his sole ownership of the Property to himself and Mrs. Higgins during his 2016

Bankruptcy Case, without notice and a hearing as required by §363(b) of the Bankruptcy Code

and without obtaining Court approval, and (ii) the Transfer can be set aside under §5105 of the

Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S. §5101, *et seq.* ("PUFTA")[14] because

it was made for no consideration when the Debtor was insolvent or the Transfer rendered him

insolvent.  As such, the Parker Trust argues, *Napotnik* does not support the Claimed Property

Exemption.  The Parker Trust also argues that in order for a tenancy by the entireties to arise

under Pennsylvania law, unities of time, title, interest, possession and marriage must exist

simultaneously, citing *In re Silvia Maria DelCorso,* 382 B.R. 240, 252 (Bankr. E.D. Pa. 2007),

and asserts that the Transfer may not meet these unities.[15]

In his Response, the Debtor admits he did not seek the Court's approval for the Transfer

prior to making it, but denies it was made without disclosure because the Quitclaim Deed "was

recorded, making it a matter of public record, thereby putting the world on notice at the time the

deed was recorded."[16]  With respect to whether the unities of ownership were present to create an

entireties property, the Debtor asserts the Parker Trust's reliance on *DelCorso* is misplaced

because property acquired and placed in the names of both husband and wife is presumed to be

held by the entirety and creates an entireties estate, citing *U.S. v. Klimek,* 952 F.Supp. 1100,

---

[14] PUFTA was amended, effective February 20, 2018, to change the title of the statute to the Pennsylvania Uniform Voidable Transfer Act, but the substance of the statute did not change.  *In re Carbone,* 615 B.R. 76, 79 n.2 (Bankr. E.D. Pa. 2020).  Here, the Transfer occurred prior to the amendment, and therefore the Court will refer to the statute as PUFTA, as it was titled at that time.

[15] The Court notes that this argument, if not half-hearted, is inartfully pled by the Parker Trust's sole assertion that "one might question if the unities were satisfied in [the Transfer]."  Exemption Objection, at ¶24.  Nonetheless, the Court will address this argument as a basis for the objection.

[16] Response, at ¶4.

1115-16 (E.D. Pa. 1997). The Debtor further argues that in *DelCorso*, the bankruptcy court

found that the unities of ownership existed once the debtor executed and recorded the deed

conveying property from herself alone to herself and her husband.[17] Here, the Debtor argues, the

Quitclaim Deed was executed and recorded on October 12, 2016, at which time the unities of

ownership existed.[18] Finally, the Debtor argues that to the extent the Parker Trust seeks to avoid

the Transfer under §549 of the Bankruptcy Code, it lacks authority to do so because the statute

only empowers the trustee or debtor-in-possession to do so and because any such action is time-

barred under §549(d), which requires that such an action was to be commenced no later than the

earlier of (a) two years after the Transfer was made, or (b) the time the 2016 Bankruptcy Case

was closed. Likewise, the Debtor argues that any claim under PUFTA is time-barred because the

Transfer occurred approximately six years before the Debtor filed the present case, while §5109

of PUFTA provides that actions under that Act must be made within four years of the transfer to

be avoided (or within one year after the transfer could reasonably have been discovered).

### C.      The Post-Hearing Briefs

As noted *supra,* at the conclusion of the Hearing the Court directed the Parties to brief

three issues: (a) where one of the grounds for the Exemption Objection under Federal Rule of

Bankruptcy Procedure Rule 4003(b) ("Rule 4003(b)") is that the Transfer was a fraudulent

---

[17] The Debtor also argues that *DelCorso* is problematic for the Parker Trust because there the Court found the debtor's transfer of property from her name to the names of herself and her husband just prior to her bankruptcy filing was a fraudulent transfer under §548(a) of the Bankruptcy Code, which requires that any such action be brought within two years of the bankruptcy filing. Id. at ¶22. The Debtor argues that any such fraudulent transfer action had to be based on a transfer on or after August 2, 2020, *i.e.* two years prior to the present case being commenced, whereas the Transfer occurred on October 16, 2016, outside the two year limitations period. This argument is a red herring, as the Parker Trust cites *DelCorso* for its findings related to the unities of ownership, not for its finding that the transfer at issue was a fraudulent transfer under §548.

[18] The Debtor's assertion that the Quitclaim Deed was executed **and** recorded on October 12, 2016 is belied by the Recorder of Deeds' timestamp on the Quitclaim Deed, reflecting that it was recorded on November 1, 2016 at 9:19 a.m. *See* Bankr. Docket No. 81.

transfer under PUFTA, is an adversary proceeding required for the fraudulent transfer

determination (the "Adversary Proceeding Issue"); (b) whether a post-petition transfer of a

debtor's interest in property without notice and a hearing under §363(b) of the Bankruptcy Code

is void *ab initio* or voidable (the "Voidness Issue"); and (c) whether the statute of limitations for

a fraudulent transfer claim under Pennsylvania law has expired with respect to the Transfer (the

"SOL Issue").

      With respect to the Adversary Proceeding Issue, the Parker Trust argues that the

Exemption Objection is made pursuant to Rule 4003(b), not Federal Rule of Bankruptcy

Procedure Rule 7001 ("Rule 7001"), and therefore proceeds as a contested matter, not an

adversary proceeding.  Under Rule 4003(b), the Parker Trust asserts, a party in interest has until

30 days after the conclusion of the §341 Meeting (or within 30 days after amendment of

Schedule C) to file an objection to a debtor's claimed exemptions, and there is nothing in the

Bankruptcy Code or Rule 7001 requiring an adversary proceeding.  The Debtor, on the other

hand, argues that a determination of the voidability of the Transfer cannot be made after only a

summary hearing on the Exemption Objection without Mrs. Higgins' participation, because

doing so would serve to deprive Mrs. Higgins of her interest in the Property, which can only be

accomplished by adversary proceeding.  The Debtor cites Rule 7001(2), which provides, in

relevant part, that "a proceeding to determine the validity, priority or extent of a[n] … interest in

property" is an adversary proceeding.  F.R.B.P. 7001(2).[19]  The Debtor argues that sustaining the

Parker Trust's Exemption Objection without an adversary proceeding would violate Mrs.

Higgins' due process rights under the Fifth and Fourteenth Amendments to the United States

Constitution.

---

[19] Bankruptcy Rule 7001(2) excepts proceedings under Bankruptcy Rules 3012 and 4003(d),

With respect to the Voidness Issue, the Parker Trust asserts that the Transfer in the 2016

Bankruptcy Case without notice and a hearing was void *ab initio*, based on §363(b)'s plain

language requiring notice and a hearing.  Courts view that requirement, the Parker Trust argues,

in light of due process principles holding that notice and opportunity to be heard is mandated

where a trustee or debtor seeks to sell property of the estate outside the ordinary course of

business.  The Debtor counters that courts have held unauthorized post-petition transfers to be

voidable under §549, not void *ab initio*, and are subject to a trustee's discretion as to whether to

seek avoidance or not.  Moreover, the Debtor argues, only a trustee is authorized under §549 to

avoid post-petition transfers, and only within two years of the date of the transfer.  Here, "[w]hile

this transaction may have been challenged, if any attempt would have been made, it would have

to have been by a trustee and commenced on or before October 12, 2018, neither of which

occurred."  *See* Debtor Post-Hearing Brief, at §III.B.i.

With respect to the SOL Issue, the Parker Trust argues that the limitations period has not

expired.  The Parker Trust first argues that the limitations period applicable to the Exemption

Objection is governed by Rule 4003(b), rather than PUFTA, providing that objections to a

debtor's claimed exemptions must be filed within 30 days of the conclusion of the debtor's

§341(a) meeting of creditors.[20]  The Parker Trust then argues that even if PUFTA's four-year

statute of limitations applies to the Exemption Objection, it did not expire due to operation of

Pennsylvania's "suspension statute" and §108(c) of the Bankruptcy Code.  Those statutes, the

Parker Trust asserts, work in conjunction to suspend the running of PUFTA's statute of

limitations during the period a bankruptcy stay is in effect, and as such, here PUFTA's four-year

---

[20] The remainder of the Parker Trust Post-Hearing Brief on this point focuses on application of PUFTA and the badges of fraud to the Transfer, rather than to the SOL Issue.  *See* Parker Trust Post-Hearing Brief, at §III.A.

limitations period did not begin running from the date of the post-petition Transfer, *i.e.,* October 16, 2022, but rather began running on the date the Debtor received his discharge in the 2016 Bankruptcy Case, *i.e.* July 2, 2021, pursuant to §362(c) of the Bankruptcy Code.[21]   The Debtor, on the other hand, argues that PUFTA's four-year statute of limitations, applicable in an action to avoid the Transfer under §544 of the Bankruptcy Code, expired well before the Debtor's petition in this case was filed on August 2, 2022, whether using the date of October 16, 2016, when the Transfer was made, or November 1, 2016, when the Transfer was publicly recorded, thereby putting parties on constructive notice of the Transfer.   As such, the Debtor argues, the Parker Trust is left without a timely claim for avoidance of the Transfer under PUFTA.

## III.    DISCUSSION

### A.    Upon the Transfer, the Debtor and Mrs. Higgins Owned the Property as an Entireties Property

As an initial matter, the Court finds that the Debtor and Mrs. Higgins owned the Property as entireties property as of October 12, 2016, when the Quitclaim Deed was executed.   This is because on that date, Pennsylvania's requirements for the establishment of tenancy by the entireties were met: there was unity of time, title, interest, and possession, all while the Debtor and Mrs. Higgins were married.   In plain English, "[a] tenancy by the entirety arises when a husband and wife take identical interests simultaneously by the same instrument, with the same right of possession.   Each spouse owns the whole or the entire property and not merely a divisible part of the whole."   *DelCorso,* 382 B.R. at 252 (citing *Farda v. Commonwealth of Pennsylvania,* 849 A.2d 297, 298 n.1 (Pa. Cmwlth. 2004)).

---

[21] Presumably the Parker Trust is referring to §362(c)(2)(c) of the Bankruptcy Code, providing that, subject to certain exceptions, the automatic stay under §362(a) continues until the earliest of case closure, case dismissal, or the time a discharge is granted or denied in a chapter 13 bankruptcy case.

Here, putting aside whether the Debtor was required to or should have sought Court authorization for the Transfer, the Debtor is correct that Pennsylvania's requirements for an entireties estate were met.  Although Mr. Higgins owned the Property in his name alone prior to October 12, 2016, he and Mrs. Higgins acquired the Property jointly by the Quitclaim Deed on that date, and nothing therein creates a different interest or right of possession as between them. As such, an entireties property interest was created, and the Parker Trust makes no argument that any other type of interest was created in the alternative.  *See DelCorso,* 382 B.R. at 253 ("Property can be presumed to be held by a husband and wife as tenants by the entirety, but only if the property is conveyed to or held by both spouses.  Title is then presumed to be held by the entirety even if the conveyancing instrument is silent in that regard."); *see also U.S. v. Cusumano,* 1991 WL 274835, at *1 (E.D. Pa. Dec. 18, 1991) ("Property acquired in the names of both husband and wife is presumed to be held by the entireties, and the placing of property in the names of both spouses, without more, creates an entirety estate.") (citing *In re Holmes' Estate,* 200 A.2d 745 (1964)).

In fact, what occurred in the present case is similar to the facts of *DelCorso,* where the debtor wife transferred property she held in her name alone to herself and her husband.  *Id.,* 382 B.R. at 244.  Although that transfer occurred pre-petition, whereas here the Debtor's Transfer occurred post-petition, the central issue for both is/was whether an entireties estate was created under Pennsylvania law.  The *DelCorso* court found that it was once the debtor transferred her property to herself and her husband by deed just prior to her bankruptcy filing.  *Id.* at 252 ("The four unities did not exist in the Bethlehem home until Debtor executed and recorded the 2006 Deed to herself and her husband.").  Likewise, when the Debtor executed the Quitclaim Deed

transferring his property to himself and Mrs. Higgins, the four unities existed to create an

entireties property.

### B.    Debtor's Transfer Without Conformity to §363(b)'s Notice and Hearing Requirements Rendered the Transfer Voidable, Not Void *Ab Initio*

The Parker Trust argues that the Debtor's Transfer of the Property to Mrs. Higgins

without adherence to §363(b)'s notice and hearing requirements rendered the Transfer void *ab*

*initio*.  The Debtor, on the other hand, argues that post-petition transfers are voidable, not void *ab*

*initio,* and only by a trustee pursuant to §549 of the Bankruptcy Code.

There is a split of authority among courts on this issue.  Some courts have found post-

petition transfers that did not adhere to §363(b)'s notice requirement to be voidable.  *See In re*

*BFW Liquidation, LLC,* 471 B.R. 652, 670 (Bankr. N.D. Ala. 2012) (in stating that failure to

provide the notice required under §363(b) and Bankruptcy Rule 2002(a) is grounds for setting

aside a bankruptcy sale "in appropriate circumstances," citing to various cases holding that such

transfers are voidable).  Others have held these transfers to be void.  *Id.* (citing cases); *see also*

*Hill v. Portillo (In re Kenneth C. Casey, Inc.),* 2022 WL 272630, at *16 (Bankr. D. Colo. Jan. 28,

2022) (in finding that the trustee's failure to comply with §363(b)'s notice requirement prior to

selling certain estate property rendered the sale null and void, citing to cases voiding post-

petition transfers without notice).

In arguing that post-petition transfers made without adherence to §363(b)'s notice and

hearing requirements are void *ab initio*, the Parker Trust cites only to cases outside the Third

Circuit.  *See* Parker Trust Post-Hearing Brief, at 6-7 (citing *In re Lavigne,* 183 B.R. 65, 69-70

(Bankr. S.D.N.Y. 1995), *aff'd,* 199 B.R. 88 (S.D.N.Y. 1996), *aff'd,* 114 F.3d 379 (2d Cir. 1997)

and *In re Weisser Eyecare, Inc.,* 245 B.R. 844, 850 (Bankr. N.D. Ill. 2000)).  Decisions the Court

has reviewed from this jurisdiction, however, appear to have landed on both sides of the issue.

*Compare Esposito v. Title Ins. Co. of Pa. (In re Fernwood Markets),* 73 B.R. 616, 621 (Bankr.

E.D. Pa. 1987) (stating that "ample authority exists for the principle that sales within the scope of

§363(b)(1), of which no proper notice was provided, *may* be set aside," and holding the sale at

issue was voidable at the election of the creditor that did not receive proper notice of the

proposed sale) (citing cases) (emphasis added)[22] and *In re F.A. Potts & Co., Inc.,* 86 B.R. 853,

859-862 (Bankr. E.D. Pa. 1988) (citing, *inter alia, Esposito* in vacating a previously entered sale

order based on defective notice, but only after engaging in analysis of whether "compelling

equities" favored vacating the order), *with Fed. Nat. Mortg. Assoc. v. Foster (In re Foster)*, 19

B.R. 28, 29 (Bankr. E.D. Pa. 1982) ("Pursuant to §363(b) of [the Bankruptcy Code], the sale of

property of the estate, which would be outside of the ordinary course of business, can only be

accomplished after notice and a hearing.  This provision is expressly applicable to Chapter 13

cases.  There is no question that statutory procedure was not followed in this case.  Failure to

comply with the procedure mandated by Congress requires this Court to order that the transfer be

set aside and that title be revested in the name of [the debtor].").[23]

      The decisions from within this jurisdiction are admittedly dated, but the Court has not

found nor been pointed to more recent authority addressing this issue.  While the decisions are

---

[22] The Parker Trust argues that *Fernwood Markets* is distinguishable from the present case because there a confirmed plan contemplated the sale at issue notwithstanding the failure to comply with §363(b)'s notice requirement, such that the sale was voidable at the option of the creditor not noticed, rather than void *ab initio*.  Parker Trust Post-Hearing Brief, at 8.  The Court disagrees, as there is nothing in the *Fernwood Markets* decision limiting its voidability approach to cases where a confirmed plan contemplated the sale or transfer at issue.

[23] The split of authority even within this jurisdiction seems to have been tacitly acknowledged by other decisions that have provided equivocal statements.  *See In re New York City Shoes, Inc.,* 89 B.R. 479, 484 (Bankr. E.D. Pa. 1988) (the failure to provide notice of a post-petition sale of estate property as required by §363(b) "normally renders the entire sale voidable, if not void") (citing the *Fernwood Markets* and *Foster* decisions as well as decisions outside the Third Circuit); *In re Young,* 76 B.R. 504, 507 (Bankr. E.D. Pa. 1987) (post-petition transfer by the Debtor "was a gross violation of 11 U.S.C. §363(b)(1), rendering the transfer at least voidable") (citing in comparison the *Fernwood Markets* and *Foster* decisions).

split, the Court sides with those decisions holding that post-petition transfers of estate property that do not comply with §363(b)'s notice requirements are voidable, not void *ab initio*. It does so because that result harmonizes with §549 of the Bankruptcy Code, which provides that the trustee "*may* avoid" unauthorized post-petition transfers. *See* 11 U.S.C. §549(a) (emphasis added); *In re Bressman,* 327 F.3d 229, 236 (3d Cir. 2003) ("Section 549(a) of the Bankruptcy Code *authorizes* the Trustee to avoid post-petition transfers of property of the estate that are not authorized by the Code or an order of the Bankruptcy Court.") (emphasis added); *Main, Inc. v. Blatstein,* 1999 WL 424296, at *4, n.4 (E.D. Pa. June 23, 1999) ("Section 549(a) *allows* the trustee to avoid [unauthorized post-petition transfers].") (emphasis added). The statute's use of the term "may" indicates that avoidance is permissive, not mandatory. *See Nickeo v. Virgin Islands Telephone Corp.,* 42 F.3d 804, 808 (3d Cir. 1994) (finding statutory use of the permissive term "may" reflected legislature's intent that exhaustion of all administrative remedies prior to filing a complaint was not mandatory). If unauthorized post-petition transfers were void *ab initio,* there would be no logic to §549's permissive language; the trustee would not have a choice as to whether to avoid such a transfer because it would already be treated as if it never occurred. *See 40235 Washington St. Corp. v. W.C. Lusardi,* 177 F.Supp.2d 1090, 1105 (S.D. Cal. 2001) ("Under the Code, void transactions are treated as if they never occurred.") (citing *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 373 (10th Cir. 1990)).

As such, based on the plain language of §549, and following the line of cases finding as such, the Court holds that post-petition transfers that do not adhere to §363's notice requirement are voidable, not void *ab initio.*

      **C.**      **An Adversary Proceeding is Required to Avoid the Transfer as a Fraudulent Transfer Under PUFTA**

Having found that the Transfer was not void *ab initio*, the success of the Exemption

Objection hinges on whether it is nonetheless voidable as a fraudulent transfer pursuant to §544

and PUFTA.  The question is whether an objection to the Debtor's Claimed Exemption is the

proper procedural mechanism to do so.  The Parker Trust asserts that the Exemption Objection is

a contested matter under Bankruptcy Rule 4003(b), and therefore an adversary proceeding is not

required.  The Debtor argues the opposite, arguing that due process and Rule 7001(2) require an

adversary proceeding because the Exemption Objection's goal is to deprive Mrs. Higgins of her

interest in the Property.

The Parker Trust's argument relies on what it asserts is the plain language of Rule

4003(b), Rule 7001, and §522(l) of the Bankruptcy Code.  According to the Parker Trust, Rule

4003(b)(1) requires a party in interest to file an objection to a claimed exemptions within 30 days

of the conclusion of the meeting of creditors under §341(a), and therefore that is the procedural

mechanism by which the Exemption Objection is to be prosecuted.  Nothing in Rule 7001,

setting forth matters that are adversary proceedings, references or requires an objection to a

debtor's claimed exemption to be filed as an adversary proceeding.  Nor does §522(l) of the

Bankruptcy Code, which requires a debtor to file a schedule listing his or her property claimed as

exempt and provides that such property is exempt absent objection, set forth any mandate that

objections are to be filed as an adversary proceeding.[24]  In essence, the Parker Trust argues that

the absence of any other provision of the Bankruptcy Code or Bankruptcy Rules requiring an

adversary proceeding points back to Rule 4003(b), which plainly states that a party in interest

may file an objection to claimed exemptions.

---

[24] Section 522(l) provides, in relevant part, that "The debtor shall file a list of property that the debtor
claims as exempt under subsection (b) of this section … Unless a party in interest objects, the property
claimed on such list as exempt is exempt."  11 U.S.C. §522(l).

Though the Parker Trust fails to cite it in its Post-Hearing Brief, there is some authority supporting the argument that objections to exemptions are distinct from adversary proceedings and need not proceed as such.  *See Ziebarth v. Adams (In re Adams)*, 833 Fed. Appx. 679, 681 (9th Cir. 2020) (drawing a distinction between the procedural mechanism of a claim objection as a contested matter under Bankruptcy Rule 9014, rather than an adversary proceeding, in finding that the bankruptcy court and bankruptcy appellate panel erred in considering the debtors' motion to dismiss an objection to a claimed exemption, because unlike an adversary proceeding, a contested matter is not subject to a motion to dismiss); *Cogliano v. Anderson (In re Cogliano)*. 355 B.R. 792, 805 (B.A.P. 9th 2006) ("Objections to claims of exemption need not be by adversary proceedings: Rule 4003(b) only prescribes the filing of objections within the specified time, and delivery of copies to the interested parties, and 4003(c) mandates '[a]fter hearing on notice, the court shall determine the issues presented by the objections.'  Rather, a claim objection is a contested matter, so the bankruptcy court had authority to decide the eligibility of the IRA for exemption on hearing the objection to [the debtor's] first amended claim of exemption.") (internal citation omitted).

One court's reasoning would support the argument that this is the case even where the grounds underlying the objection is a fraudulent transfer claim under state law.  In *In re Page*, 240 B.R. 548 (Bankr. W.D. Mich. 1999), the bankruptcy court granted summary judgment in favor of the debtor with respect to an objection to his claimed exemption of certain stock and a note as entireties property, finding that the objection was untimely under Bankruptcy Rule 4003(b).  *Id.* at 552.  The court, however, expressly made that ruling without prejudice to any action by the trustee to recover property pursuant to the strong-arm powers under §544 of the Bankruptcy Code, and in so doing reasoned that "an objection to exemptions is not tantamount to

14

an action to recover exempt property." *Id.* The bankruptcy court explained the distinction

between an objection to a claimed exemption of property and an adversary proceeding that seeks

to recover the property as a fraudulent transfer:

> The distinction between an objection to an entireties exemption and an action to set aside a fraudulent conveyance that creates a tenancy by the entireties is particularly important in bankruptcy … If a creditor or other party in interest successfully objects to the entireties exemption, the court will administer the debtor's interest in the entireties property for the benefit of all the debtor's creditors – not simply joint creditors of the debtor and the non-debtor spouse … On the other hand, if the trustee succeeds in *avoiding* the transfer that created the tenancy by the entireties, the trustee recovers the entire property (*i.e.,* both the debtor's and the spouse's interests) for the benefit of the estate under section 550, and may dispose of the property without the restrictions of section 363(h)-(j) … In sum, although the court must look to Michigan's fraudulent conveyance laws when assessing a debtor's entitlement to an entireties exemption, the two remedies are, at least in the context of bankruptcy, entirely distinct.

*Id.* at n.5 (internal citations omitted) (emphasis in original).[25]  The *Page* court therefore viewed

an objection to the debtor's claimed exemption in entireties property, grounded in a state law

fraudulent conveyance claim, as distinct from and seeking a different remedy than a fraudulent

transfer avoidance action.

The Debtor argues that Constitutional due process and Rule 7001(2) mandate that an

action which would deprive Mrs. Higgins of her interest in the Property can only proceed

through an adversary action.  In support of his argument the Debtor relies on *Havaco of Am. v.

Hill,* 197 F.3d 1135, (11th Cir. 1999), where the court found that only an adversary proceeding

seeking to avoid the creation of an entireties property as a fraudulent transfer, rather than an

objection to the debtor's claimed exemption of such property, would protect the non-debtor

spouse's due process rights.  *Id.* at 1139-40 ("Avoiding the transfer which created a tenancy-by-

---

[25] The *Page* court also stated that "When the court sustains an objection to an entireties exemption, the trustee may sell the interest of the non-debtor spouse, but only under the conditions prescribed in section 363(h)-(j).  The non-debtor spouse then takes his or her share under 363(j)." *Id.*

the-entireties will necessarily eliminate the property rights of one of the tenants. Therefore, a court may not avoid such a transfer, and thereby make the tenancy-by-the-entireties property available to the creditors of one tenant, without affording *both* tenants their rights to due process. Accordingly, a plaintiff seeking to avoid the creation of tenancy-by-the-entireties property on the basis that the estate resulted from a fraudulent transfer must join both tenants in the proceedings.") (internal quotation omitted) (emphasis in original); *see also In re Quillen,* 408 B.R. 601, 605 (Bankr. D. Md. 2009) (finding that, to the extent parties objecting to the debtor's claimed exemption of entireties property sought to attack the integrity and legitimacy of the asserted entireties estate, and thus void the debtor's wife's claimed interest in such property, they first had to file an adversary proceeding joining her as a defendant to afford her fundamental due process).

The Debtor also relies on the Ninth Circuit's reasoning in *Lee v. Field (In re Lee),* 889 F.3d 639 (9th Cir. 2018), where the court found that an action to avoid the debtor's creation of an entireties estate for two properties he subsequently claimed as exempt, on the grounds that it was a fraudulent transfer, served as an objection to the claimed exemption for purposes of Bankruptcy Rule 4003(b). *Id.* at 644. In so doing, the court reasoned that, in that context, the adversary action and an objection to the claimed exemption were "inextricably intertwined," as the debtor could only claim a state-law exemption for the properties because he had previously conveyed them to himself and his spouse as tenants by the entirety, and because such property was exempt under state law, "the trustee had no legal basis for objecting to the claimed exemptions unless he could avoid the transfer of that property interest. In order to set aside [the debtor's] transfers and recover some portion of the challenged interests in [the properties] for the benefit of the bankruptcy estate, the trustee had to bring an adversary proceeding." *Id.* at 644-45

(citing *Havaco*); [26] *see also In re Harry,* 151 B.R. 735, 738 (Bankr. W.D. Va. 1992) ("Unless and until the trustee successfully avoids the transfer that created the tenancy by the entirety, the debtor is entitled to the exemption.").

The Court agrees with the Debtor's argument that, because the Exemption Objection seeks to deprive Mrs. Higgins of her asserted interest in the Property, due process dictates that an adversary proceeding is required, joining her as a defendant with an opportunity to defend. The Court does not believe the Claimed Exemption can be adjudicated in the same manner as an adversary proceeding, with the Debtor raising all defenses and arguments in an exemption proceeding on behalf of Mrs. Higgins, or that she could simply intervene in such a proceeding. Rather, just as the *Havaco* court found, Mrs. Higgins' due process rights are not adequately preserved in a proceeding "in which she is not a party and in which her property rights may effectively be terminated." *Id.,* 197 F.3d at 1140. Moreover, a proceeding seeking to avoid the Transfer under PUFTA in order to bring the Property back into the Debtor's bankruptcy estate for satisfaction of claims against him would seem to qualify as either "a proceeding to recover … property" and/or "a proceeding to determine the validity … or extent of … [an] other interest in property," under Rule 7001(1) and (2), both of which are prosecuted as an adversary proceeding. *See id.* ("Additionally, Bankruptcy Rule 7001 requires a bankruptcy trustee to initiate adversary proceedings to avoid transfers by the debtor under section 548 of the Bankruptcy Code.

---

[26] The Debtor also cites *Atkinson v. Paturu (In re Paturu),* 2021 Bankr. LEXIS 102, at *21 (Bankr. D.N.J. Jan. 14, 2021), quoting it as having stated that "[w]ithout avoiding the transfer, the trustee had no legal basis to object to the exemptions." Debtor Post-Hearing Brief, at §III.A.i. The Court takes this citation to be the Debtor's representation that *Paturu* offers additional support, beyond *Lee,* for the principle that avoidance of the underlying transfer forms the basis for an objection to the claimed exemption. The Court's review of *Paturu,* however, reveals that it made the above-quoted statement only in discussing the findings in *Lee,* not as its own holding or conclusion in connection with resolution of the case before it. The Court therefore finds the Debtor's Post-Hearing Brief misleading in its citation to *Paturu,* and advises counsel for the Debtor to ensure in the future that cases cited and quoted are presented in the proper context with explanatory parentheticals as appropriate.

Florida's fraudulent transfer statute is sufficiently similar to §548 to expect federal bankruptcy courts to apply comparable procedures when considering whether to avoid a purportedly fraudulent transfer law.").

The Court concludes that because basis for the Exemption Objection, other than the voidness argument already disposed of *supra*, is that the Transfer was fraudulent under PUFTA, an adversary proceeding joining Mrs. Higgins is required to satisfy due process. As the Court discusses *infra,* however, the limitations period for such an action has expired.

**D.    Even if the Parker Trust Had Filed an Adversary Complaint to Avoid the Transfer, Any Such Action is Time-Barred**

The Debtor asserts that any claim the Parker Trust had for avoidance of the Transfer under PUFTA is time-barred under §5109 of that statute, which requires that a fraudulent transfer action be commenced within four years after the transfer was made or the obligation was incurred, or within one year after the transfer or obligation was or could reasonably have been discovered.[27] The Parker Trust counters that a claim under PUFTA remains viable because Rule 4003(b)'s limitation period applies, not PUFTA's, and even if PUFTA's does apply, it was suspended while the Debtor's 2016 Bankruptcy Case was pending until he obtained a discharge in 2021.

The Court finds that any claim the Parker Trust had under PUFTA is time-barred by application of the four-year limitations period under §5109 of that statute. The Transfer occurred

---

[27] "A claim for relief with respect to a transfer or obligation under this chapter is extinguished unless action is brought:

(1) under section 5104(a)(1) (relating to transfer or obligation voidable as to present or future creditor), not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant; or

(2) under section 5104(a)(2) or 5105(a) (relating to transfer or obligation voidable as to present creditor), not later than four years after the transfer was made or the obligation was incurred." 12 Pa. C.S. §5109.

on October 16, 2016, and the Quitclaim Deed was recorded on November 1, 2016.  Therefore,

even though the Debtor failed to provide notice of the Transfer in the 2016 Bankruptcy Case, as

of November 1, 2016, creditors and parties-in-interest were on constructive notice that the

Transfer had occurred.  *See* 21 P.S. §357 (providing that the legal effect of the recording of a

deed shall be to give constructive notice to, among other, judgment creditors of the fact of the

granting of such rights).  The statute of limitations for bringing a fraudulent transfer action

therefore began to run on November 1, 2016, and expired well before the Debtor's current

bankruptcy case was filed.

Contrary to the Parker Trust's argument, PUFTA's limitations period was not suspended

by operation of Pennsylvania's suspension statute[28] and §108(c) of the Bankruptcy Code[29] until

the Debtor received a discharge in July 2021.  The Transfer was a post-petition event giving rise

to a post-petition fraudulent transfer claim.  That claim was not stayed by operation of §362(a) of

the Bankruptcy Code in the 2016 Bankruptcy Case, which applied only to pre-petition claims.  *In

re Rodriguez,* 629 F.3d 136, 138 (3d Cir. 2010) (the automatic stay is applicable only to claims

that arise pre-petition, and not to claims that arise post-petition) (citing *In re Grossman's Inc.,*

607 F.3d 114, 122 (3d Cir. 2010)); *Taylor v. First Fed. Sav. & Loan Ass'n of Monessen,* 843

F.2d 153, 154 (3d Cir. 1988) (the automatic stay is not intended to bar proceedings for post-

petition claims that could not have been commenced before the petition was filed).  As such, the

---

[28] 42 Pa. C.S. §5535(b) provides that "Where the commencement of a civil action or proceeding has been
stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which
the action or proceeding must be commenced."

[29] Section 108(c) of the Bankruptcy Code provides, in relevant part, that "Except as provided in section
524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an
agreement fixes a time period for commencing or continuing a civil action in a court other than a
bankruptcy court on a claim against the debtor … then such period does not expire until the later of – (1)
the end of such period, including any suspension of such period occurring on or after the commencement
of the case; or (2) 30 days after notice of the termination or expiration of the stay under section 362 …
with respect to such claim."  11 U.S.C. §108(c).

Parker Trust or another party in interest was not prohibited from seeking to avoid the post-petition Transfer under PUFTA or other applicable law, rendering both Pennsylvania's suspension statute and §108(c) of the Bankruptcy Code inapplicable.

The limitations period under Rule 4003(b) does not govern whether the Exemption Objection is timely. The Parker Trust argues that, while a bankruptcy court may look to state substantive law to interpret an exemption, the applicable statute of limitations is procedural and governed by Rule 4003(b). To the contrary, however, courts have looked to the applicable statute of limitations for the claims underlying an exemption objection to determine whether it is timely, *not* the 30-day period set forth in Bankruptcy Rule 4003(b). *See, e.g., In re Duncan,* 329 F.3d 1195 (10th Cir. 2003) (the debtor was not entitled to claim a homestead exemption in property where the trustee avoided the debtor's prepetition transfer of the property as a fraudulent transfer within the statutory period for doing so, notwithstanding the trustee's failure to object to the exemption within the 30-day period under Rule 4003(b)); *In re Levine,* 134 F.3d 1046 (11th Cir. 1998) (finding that the trustee was not barred from contesting the exempt status of annuities based on his failure to object to the exemption by the 30 day deadline under Rule 4003(b) because the fraudulent transfer avoidance action the trustee was pursuing was timely under Florida law). These courts' approach reflects the problematic result courts have noted would ensue if Rule 4003(b)'s 30-day limitations period were to be substituted for the longer limitations periods that apply to avoidance actions under the Bankruptcy Code. *See, e.g., Harry*, 151 B.R at 738 ("Requiring the trustee to bring [an action to avoid a fraudulent transfer that created a tenancy by the entirety] within the 30 day [exemption] objection period would defeat the purpose of the much longer limitations period on the trustee's avoiding powers provided in 11 U.S.C. §546(a).").

The Parker Trust's argument represents the flip-side of the problem these courts have noted:  just as it is problematic for the limitations period for future avoidance actions to be governed by Rule 4003(b)'s 30-day limitations period, it is equally problematic for that limitations period to apply to avoidance actions the limitations period of which has expired. Indeed, if the Court were to accept the Parker Trust's argument, the look-back period for a challenge to an exemption would seemingly be limitless, so long as the objection was filed within 30 days of the conclusion of the §341 Meeting.

The Court concludes that the four-year look back period under PUFTA applies to the Parker Trust's avoidance claim.  As stated above, that limitation period began running on November 1, 2016, and was not suspended or tolled under Pennsylvania's suspension statute or §108(c).  The Debtor's present bankruptcy case was filed on August 2, 2022, well after the PUFTA look back period expired.  As such, the Parker Trust's PUFTA claim is time-barred, and cannot serve as the basis for the Objection Exemption.[30]

---

[30] Although the Parker Trust does not raise avoidance pursuant to §549 of the Bankruptcy Code in the Exemption Objection as a basis for its objection, an avoidance action under that provision would likewise be time-barred for the same reason, *i.e.* the limitations period for such a claim began running no later than November 1, 2016, and expired well before the Debtor's current bankruptcy case was filed.  *See* 11 U.S.C. §549(d) ("An action or proceeding under this section may not be commenced after the earlier of – (1) two years after the date of the transfer to be avoided; or (2) the time the case is closed or dismissed."). 11 U.S.C. §549(d).

## IV.    CONCLUSION

For the reasons set forth above, the Exemption Objection will be overruled, as it was

required to be prosecuted as an adversary proceeding, which is now time-barred.

An order consistent with this Memorandum will be entered.

Dated:  May 3, 2024

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Robert J. Lohr, II, Esquire
Lohr and Associates, Ltd.
1246 West Chester Pike, Suite 312
West Chester, PA 19382

Melissa C. Chiang, Esquire
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581

Deirdre M. Richards, Esquire
Fineman Krekstein & Harris
1801 Market Street, Suite 1140
Philadelphia, PA 19103

Thomas J. Barnes, Esq.
Egbert & Barnes, P.C.
349 York Road, Suite 100
Willow Grove, PA 19090

Kenneth E. West, Esquire
Chapter 13 Trustee
P.O. Box 1229
Philadelphia, PA 19105