IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
|     Robert L. Higgins, | : | |
|     Debtor. | : | Bankruptcy No. 22-12021-MDC |

# MEMORANDUM

**I.    INTRODUCTION**

On September 27, 2022, the Commodity Futures Trading Commission (the "CFTC") filed a civil enforcement action in the United States District Court for the District of Delaware (the "District Court") against the debtor, Robert Higgins (the "Debtor", and together with the CFTC, the "Parties"), and two of his entities, First State Depository Company, LLC ("FSD") and Argent Asset Group LLC ("Argent").  On June 30, 2023, the District Court entered a default judgment (the "Judgment") against the Debtor that, among other things, imposed on him (a) a restitution obligation in the amount of $112,700,000.00, and (b) a civil monetary penalty in the amount of $33,000,000.00.

The CFTC has filed two proofs of claim (the "Proofs of Claim") in the Debtor's bankruptcy case.  The first is based on the restitution component of the Judgment, in the amount of $112,700,000.00 (the "Restitution Claim"),[1] and the second is based on the civil monetary penalty component, in the amount of $33,000,000.00 (the "Penalty Claim").[2]  The CFTC attached the Judgment to its addendum to both Proofs of Claim.

---

[1] Claim No. 6-4.

[2] Claim No. 7-2.

The Debtor has objected to the Proofs of Claim on various grounds, discussed *infra* (the "Claims Objection").[3] The CFTC filed an answer to the Claims Objection (the "CFTC Answer"),[4] and both parties submitted supporting briefs (each, a "Supporting Brief").[5] The Court held hearings on the Claim Objection and the Answer on February 27 and April 8, 2024 (together, the "Hearing"), after which the Court directed the Parties to submit post-Hearing briefs and took the matter under advisement. The Parties submitted their respective post-Hearing briefs on April 9, 2024 (each, a "Post-Hearing Brief").[6]

For the reasons discussed herein, the Court will overrule the Claims Objection and allow the Proofs of Claim in the amounts asserted.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Debtor's Bankruptcy Cases

The Debtor filed his first bankruptcy case under chapter 13 of the Bankruptcy Code on May 18, 2016 (the "2016 Case").[7] The Debtor's plan was confirmed in the 2016 Case, and on July 2, 2021, he received a general discharge (the "Discharge"). The Debtor did not list the CFTC as a creditor in his schedules in the 2016 Case, nor did he provide the CFTC with notice of the 2016 Case.

On February 16, 2022, while his 2016 Case was still pending, the Debtor filed another chapter 13 bankruptcy case (the "Prior 2022 Case").[8] Although a proposed plan as well as

---

[3] Bankr. Docket No. 197.
[4] Bankr. Docket No. 214.
[5] Bankr. Docket Nos. 244, 245.
[6] Bankr. Docket Nos. 250, 251.
[7] Bankr. Case No. 16-13543.
[8] Bankr. Case No. 22-10375.

2

various motions were filed and hearings held in the Prior 2022 Case, no plan was confirmed. The Debtor did not list the CFTC as a creditor in his schedules in the Prior 2022 Case, nor did he provide the CFTC with notice of the Prior 2022 Case. On June 28, 2022, the Debtor filed a notice of voluntary dismissal.[9] The Court entered an Order the following day dismissing the Prior 2022 Case.[10]

On August 2, 2022, a little more than a month after the Prior 2022 Case was dismissed, the Debtor filed the present chapter 13 case (the "Present Case"). Concurrently with his chapter 13 petition, the Debtor filed a motion (the "Stay Extension Motion")[11] pursuant to §362(c)(3)(B) of the Bankruptcy Code. The Stay Extension Motion sought a continuation of the automatic stay in the Present Case beyond the 30-day period after which it would otherwise expire under §362(c)(3)(A), due to the Debtor's Prior 2022 Case having been pending but dismissed within the preceding one-year. *See* 11 U.S.C. §362(c)(3). On August 31, 2022, the Court entered an order denying the Stay Extension Motion.[12] The Debtor did not list the CFTC as a creditor in his schedules in the Present Case, nor did he provide the CFTC with notice of the Present Case. Nonetheless, having apparently become aware of the Present Case on or about October 22, 2022, on November 1, 2022, the CFTC entered its appearance,[13] and on January 27, 2023, filed the Proofs of Claim, which have since been amended.

---

[9] Id. at Docket No. 77.

[10] Id. at Docket No. 78. Because the Court denied the Debtor's request for an extension beyond the 30 day time period under §362(c)(3)(A), the CFTC did not need to seek relief from the automatic stay to file the civil enforcement action in the District Court on September 27, 2022, as the stay expired on September 2, 2022.

[11] Bankr. Docket No. 4.

[12] Bankr. Docket No. 39.

[13] Bankr. Docket No. 63. The following day the CFTC filed a motion seeking to reset the hearing on confirmation of the Debtor's proposed plan or extend the CFTC's deadline to object, and therein stated

B.      **The CFTC Civil Enforcement Action**

The addendum to the Proofs of Claim states that the Complaint in the CFTC's civil enforcement action in the District Court "alleges that from at least January 2014 through September 2022, the Debtor controlled Argent and FSD, which, acting as a common enterprise, engaged in a fraudulent scheme to (1) misappropriate customers' funds intended to be used to purchase precious metal, (2) misappropriate other client assets, and (3) solicit and misappropriate at least $7 million in funds and silver from at least 200 customers in connection with a fraudulent silver leasing program." Two days after the action was filed, the District Court appointed a temporary receiver (the "Receiver") and authorized him to take over the physical premises and operations of FSD and Argent. On October 4, 2022, the Receiver's accountants from Baker Tilly US, LLP ("Baker Tilly") began conducting an inventory of 1.58 million items found at FSD and Argent's offices.

None of the defendants answered the Complaint and the CFTC therefore moved for default judgment against each. The District Court entered a consent order with respect to FSD and Argent, providing for their joint and several liability for restitution and civil monetary penalties imposed on the Debtor. The separate Judgment against the Debtor sets forth findings of fact (the "Findings of Fact") detailing the fraudulent scheme perpetrated by the Debtor, FSD, and Argent, then makes conclusions of law finding that the Defendants violated the Commodity Exchange Act and the CFTC's regulations promulgated thereunder.

---

that neither the Debtor nor his counsel notified the CFTC of the Present Case until October 12, 2022. See Bankr. Docket No. 64, at ¶4

C.   **The Nondischargeability Stipulation**

After the Debtor filed the Present Case, the CFTC filed an adversary complaint (the "Nondischargeability Complaint") against the Debtor in this Court on December 2, 2022.[14]  The Nondischargeability Complaint alleged the existence of the pending civil enforcement action against the Debtor, FSD, and Argent in the District Court, and sought a determination that any resulting restitution debt and civil monetary penalty debt, in amounts to be determined, are not dischargeable pursuant to §523(a)(2)(A) of the Bankruptcy Code, because they are debts for money obtained by false pretenses, false representations, or actual fraud.

The Debtor filed an answer to the Nondischargeability Complaint,[15] but the Parties subsequently entered into a stipulation that resolved the action (the "Nondischargeability Stipulation").[16]  The Nondischargeability Stipulation provides, in relevant part, that "Without admitting any facts or allegations in the CFTC Civil Case and without waiver of any position or argument in any other proceeding except as stated herein, Defendant-Debtor waives his right to contest the dischargeability of any judgment, consent order, or settlement in the CFTC Civil Case, and agrees that in this proceeding or any other proceeding he will not argue that any judgment, consent order, or settlement order in the CFTC Civil Case is dischargeable in bankruptcy."

---

[14] Adv. Pro. No. 22-00089, at Docket No. 1.

[15] Adv. Pro. Docket No. 4.

[16] Adv. Pro. Docket No. 10.

5

### D. The Claim Objection and the Answer

#### 1. The Debtor's Arguments for Disallowance

The Claim Objection, the Debtor's Supporting Brief, and his Post-Hearing Brief argue that the Proofs of Claim should be disallowed on several grounds.

##### a. The Specificity Argument

First, the Debtor asserts the Proofs of Claim lack specificity (the "Specificity Argument"), failing to identify any customers or clients with any specific losses linked to them, and the Judgment's finding that "as much as $112.7 million of Customer and Client assets are missing from FSD" is not supported by evidence, preventing the Debtor and the Court from ascertaining how much in assets were supposed to be held by FSD, Argent or the Debtor. Underscoring this point, according to the Debtor, is Baker Tilly's reservation in its report on the inventory found and not found at FSD (the "Baker Tilly Report"), which formed the basis for the Judgment, stating that Baker Tilly did not verify the information presented therein by, for example, third party confirmations.

##### b. The Claim Ripeness Argument

Second, the Debtor asserts that, to the extent the Debtor owes a debt to the CFTC, it arose post-petition in June 2023 when the Judgment was entered. The Debtor therefore argues that any such debt was contingent and unliquidated as of the August 2, 2022, petition date, and therefore cannot form the basis of a claim against him (the "Claim Ripeness Argument").

##### c. The Time-Barred Argument

Third, the Debtor asserts that the limitations period under 28 U.S.C. §2462, providing in relevant part that "an action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years

from the date when the claim first accrued," bars any portion of the CFTC claims that arose more than five years prior to the August 2, 2022 petition date (the "Time-Barred Argument").

### d. The Discharge Argument

Fourth, the Debtor argues that to the extent any portion of the claims arose prior to the filing of the 2016 Case on May 18, 2016, such claims were discharged pursuant to the Discharge he received in June 2021 under §1328(a) of the Bankruptcy Code (the "Discharge Argument"). Although certain debts are excluded from discharge under §1328(a), the Debtor argues that none of those exclusions apply.[17] The Debtor asserts that §523(a)(3)'s exception to discharge for debts neither scheduled nor listed is inapplicable because the CFTC's claims were not known to him until September 27, 2022, when the civil enforcement action was filed in the District Court, and §523(a)(3) only excepts unlisted and unscheduled debts "if known to the debtor." Nor, the Debtor argues, can any such claims be excepted from discharge under §523(a)(2) or (a)(4) of the Bankruptcy Code because Federal Rule of Bankruptcy Procedure 4007(c) requires that a nondischargeability complaint was required to be filed 60 days after the first date set for the meeting of creditors under §341(a). With that date having long since passed, the CFTC is precluded from seeking that determination now.

### 2. The CFTC's Arguments in Response

In its Answer, Supporting Brief, and Post-Hearing Brief, the CFTC responds to each of the Debtor's arguments.

---

[17] Section 1328(a)(2) excludes from the discharge any debts "of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)." 11 U.S.C. §1328(a)(2).

### a. Response to the Specificity Argument

With respect to the Specificity Argument, the CFTC responds that it represents another collateral attack on the Judgment, and is factually incorrect in any event. It is a collateral attack because it improperly seeks to attack the sufficiency of the evidence underlying the Judgment. It is factually incorrect because the Judgment details the Debtor's fraud, including the acts that constituted the fraud, the time period during which those acts occurred, and the damages the defrauded clients and customers suffered as a result of the fraud. Addressing the Debtor's arguments that the Judgment did not detail the names of specific victims and their damages, the CFTC responds that such specificity was both unnecessary and imprudent given the potential for such victims to be targeted for further fraud in the future, but that the customer accounts impacted by the fraud were detailed in the Receiver's report to the District Court, which was also attached to the Proofs of Claim.[18]

### b. Response to the Claim Ripeness Argument

With respect to the Claim Ripeness Argument, the CFTC responds that this is an argument for a determination of whether the Debtor is eligible for chapter 13, not as a **basis** for a claim objection, because a debtor disputing a debt does not render it contingent and unliquidated for purposes of bankruptcy claim allowance. Rather, if the amount can be determined by a fixed, certain, or otherwise, specific standard, it is noncontingent and liquidated even if a debtor disputes liability. Here, the CFTC's claims were determinable by reference to specific standards,

---

[18] The CFTC responds to the Debtor's argument regarding the disclaimer in the Baker Tilly Report by arguing that this only represented Baker Tilly's statement that it did not retain a third party to audit or examine FSD's and Argent's financial statements, and does not change the fact that Baker Tilly conducted an onsite inventory of the assets found at FSD and Argent, both of which were controlled by the Debtor.

*i.e.,* the amounts outlined in the Receiver's reports to the District Court, supported by the Baker Tilly Report, that were accepted by and the formed the basis of the District Court's Judgment.

### c. Response to the Time-Barred Argument

The CFTC argues that it holds a valid, enforceable judgment from the District Court, where the Debtor could have, but did not, assert a statute of limitations defense. Having failed to do so, the CFTC argues the Debtor has waived that defense pursuant to Federal Rule of Civil Procedure 12(h), and any such argument made in this Court represents a collateral attack on the Judgment. Moreover, the CFTC asserts, the Debtor's statute of limitations defense would have failed, even if pressed, because under the Third Circuit's "continuing violations" doctrine, where a defendant's conduct is part of a continuing practice, so long as the final act falls within the limitations period, an action with respect to that conduct is not time-barred. The CFTC argues that the fraudulent scheme the Debtor perpetrated with FSD and Argent was a continuing practice, with the District Court's Findings of Facts having concluded that the defendants' acts took place into at least 2021, well within the five-year limitations period running back from the September 2022 filing of the enforcement action. Finally, the CFTC argues that the restitution component of the judgment is compensatory equitable relief designed to facilitate compensation to victims of the fraud, not a penalty within the meaning of 28 U.S.C. §2462, and therefore is not subject to its limitations period.

### d. Response to the Discharge Argument

The CFTC argues first and foremost that the Nondischargeability Stipulation precludes the Debtor's Discharge Argument; the Debtor expressly waived any argument that the Judgment is nondischargeable, and does not make any exception for any portion thereof. The Debtor and his counsel executed the Nondischargeability Stipulation, this Court approved it, and the Debtor

9

should not be permitted to argue exactly what the stipulation says he waived, *i.e.,* that the Judgment or some portion thereof is dischargeable.

Furthermore, the CFTC argues, even if the Debtor had not so stipulated, no part of the claims were discharged in the 2016 Case because the Debtor has not and cannot establish that the CFTC knew of the 2016 Case, and the CFTC's cause of action did not accrue until 2020 at the earliest, when the CFTC received documents from FSD and Argent in an incomplete response to subpoenas the CFTC issued in 2019.[19] The CFTC argues that the claims therefore were not and could not have been provided for by the Debtor's confirmed plan in the 2016 Case or subject to his Discharge. Moreover, the debts underlying the CFTC's claims arose from a course of misconduct that included the Debtor's misrepresentations and deceptive omissions with respect to every client of FSD and Argent whose assets were misappropriated, regardless of whether their accounts were opened before or after the 2016 Case was filed.

The CFTC next argues that, even if some portion of its claims could be considered to have arisen prior to the 2016 Case, the Debtor knew of them because he was an active participant in the fraud that gave rise to them. He therefore should have scheduled or listed the CFTC or the defrauded clients and customers of FSD and Argent as creditors and provided them notice of the 2016 Case. He did not do so, and therefore the claims were not discharged, and the Debtor cannot seek protection in §523(a)(3)'s "if known to the debtor" caveat to its discharge exception because he in fact knew of the claims.[20] Finally, the CFTC argues that even if the Court were to

---

[19] The CFTC notes that the incomplete response necessitated a subpoena enforcement action in 2021, culminating in the District Court holding the defendants in contempt for failure to make a court-ordered production and issuing an arrest warrant for the Debtor in March 2022.

[20] The CFTC argues that the Debtor's interpretation of §523(a)(3)'s caveat is also detached from the text of the statute, which uses the phrase "if known to the debtor" to apply to the names of the creditors whom a debtor owes debts, not to the debts themselves. Moreover, the CFTC argues, its subpoenas were issued

find that some portion of the debt underlying the Proofs of Claim arose prior to the 2016 Case and was discharged, the Receiver has determined that at least approximately $36 million of the debts relate to client and customer accounts opened after May 20, 2016, and therefore could not possibly have arisen prior to the 2016 Case. This results in a minimum restitution claim of approximately $36 million and a minimum civil monetary penalties claim of approximately $10.795 million, neither of which could be subject to the Discharge.[21]

### III.    DISCUSSION

#### A.    Burden of Proof

The Third Circuit Court of Appeals has concisely summarized the shifting burdens in claims litigation:

> [A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992) (citations omitted).

#### B.    The Debtor's Time-Barred Argument Was Waived

As the Court stated at the Hearing, the District Court entered the Judgment after the Debtor and the other defendants failed to answer. The Debtor did not assert a statute of

---

in 2019 and the Debtor responded in 2020, well before his Discharge, yet he did not amend his schedules or the plan to account for the CFTC's claims that arose as a result of the fraudulent scheme.

[21] The CFTC calculates this minimum civil monetary penalty by using the same formula the District Court used in the Judgment: multiplying the restitution amount by three, then dividing by 10.

limitations defense in the civil enforcement action, and it was therefore waived. *See, e.g., Quintero v. Angels of the World, Inc.,* 2021 WL 4464123, at *3 (E.D.N.Y. Sept. 10, 2021) (finding that defendants waived the statute of limitations as an affirmative defense by failing to appear) (citing *S.E.C. v. Amerindo Inv. Advisors,* 639 F.App'x 752, 754 (2d Cir. 2016) and *Doe v. Constant,* 354 F.App'x 543, 545 (2d Cir. 2009), both of which found that the defense was waived by failure to appear and assert it); *U.S. Bank N.A. v. Budnick,* 626 Fed. Appx. 438, 441 (5th Cir. 2015) (affirming district court's denial of Rule 60(b)(6) motion for relief from default judgment and rejecting defendants' argument that such relief should have been granted because they had a valid statute of limitations defense, reasoning that to the extent they had a viable defense, "they could have raised it before their time to file an answer had expired."); *see also Clement v. United Homes, LLC,* 2010 WL 4941489, at *2 (E.D.N.Y. Nov. 30, 2010) (deeming a defaulting defendant's statute of limitations defense abandoned by its failure to appear and assert the defense) (citing cases finding the defense waived by a defaulting defendant). This Court is bound by that waiver, and the Time-Barred Argument does not serve as a basis for disallowing the Proofs of Claim.

    **C.**    **The Debtor's Discharge Argument is Precluded by the Nondischargeability Stipulation and Lacks Substantive Merit**

The Judgment is nondischargeable for the simple and inescapable reason that the Debtor already agreed that it is. The terms of the Nondischargeability Stipulation are clear: the Debtor "waive[d] his right to contest the dischargeability of *any judgment*, consent order, or settlement" in the CFTC's civil enforcement action in the District Court, and "agree[d] that in this proceeding or any other proceeding he [would] not argue that *any judgment*, consent order, or settlement order" in the civil enforcement action is dischargeable in bankruptcy. The Debtor's

12

waiver and agreement was unqualified,[22] and unambiguous, and not limited to any particular grounds for nondischargeability under §523 of the Bankruptcy Code. It therefore operates as a forfeiture of the Discharge Argument he now presses.[23]

Moreover, even if the Debtor had not stipulated to the nondischargeability of the Judgment, the Court concludes that the CFTC's claims against the Debtor were not discharged in the 2016 Case in any amount, for two alternative but related reasons stemming from the same legal conclusion: the CFTC's claims are independent of any claims that clients and customers of FSB and Argent may have had against the Debtor in the 2016 Case.

First, the Court rejects the Debtor's argument that any portions of the CFTC's claims that arose prior to the 2016 Case were discharged and do not fall under §523(a)(3)'s exception for unscheduled debts because the Debtor did not know of them at the time he filed the 2016 Case. As the CFTC argues, the Debtor had knowledge of and directly participated in the fraudulent scheme involving FSB's and Argent's misuse of client and customer assets at the time of the 2016 Case. It is undisputed the Debtor did not list those customers' and clients' debts in his schedules in the 2016 Case, and although it is not their direct claims against the Debtor that are at issue here, their existence prompted an obligation to identify the CFTC as a potential creditor in the 2016 Case. On this point, the Court finds persuasive the case of *U.S. Commodity Futures Comm'n v. Giddens,* 2013 WL 12244536 (N.D. Ga. Jan. 31, 2013). There the court found that, although the debtor scheduled the investors of his foreign exchange fund as creditors in his chapter 7 bankruptcy case, "the [CFTC], not the investors, is the 'creditor' with respect to [the

---

[22] It is true that the Debtor's waiver of any dischargeability argument was granted "[w]ithout admitting any facts or allegations in the CFTC civil case and without waiver of any position or argument in any other proceeding," but that caveat has no bearing on the Debtor's Present Case.

[23] Perhaps tellingly, the Debtor did not address or respond to the CFTC's argument regarding the Nondischargeability Stipulation either at the Hearing or in his Post-Hearing Brief.

debtor's] [Commodities Exchange Act] restitution liability in this case." *Id.* at *14. As such, although none of the investors objected to the discharge of the debtor's restitution liability under the Commodities Exchange Act, the debtor's failure to schedule the CFTC excepted the restitution liability from discharge under §523(a)(3). *Id.* The *Giddens* court so found *notwithstanding the fact* that, like here, the CFTC's civil enforcement action against him post-dated both his bankruptcy filing and his discharge. *Id.* at *1, *6 (recounting that the debtor filed for bankruptcy in December 2010, received his discharge in May 2011, and the CFTC filed its civil enforcement action in June 2011). Adopting this reasoning, the Court rejects the Debtor's argument that he did not and could not know of the CFTC's claim against him until the civil enforcement action was filed in September 2022. Rather, because he knew of the potential claims of FSB and Argent clients and customers against him at the time of his 2016 Case, he was obligated to identify the CFTC as a potential claimant for an independent restitution claim. *Id.* at *14. Having failed to do so, any restitution claim the CFTC had against the Debtor as of May 18, 2016, was not discharged in the 2016 Case pursuant to §523(a)(3) of the Bankruptcy Code.

Second, even if the Court were to accept the Debtor's premise that he did not know and could not have known of the CFTC's restitution and civil penalty claims at the time the 2016 Case was filed, and therefore §523(a)(3) is inapplicable, the Court would still find that the claims were not discharged because they arose after the 2016 Case. The CFTC argues that it was not alerted to and did not begin investigating the Debtor's fraudulent scheme until 2019. The Debtor has not suggested or argued otherwise, and in fact has argued that he did not become aware of the CFTC's claims until the civil enforcement action was filed in September 2022 (despite being aware of and responding to the CFTC's pending investigation in 2020). As noted *supra,* however, the CFTC's restitution claim against the Debtor is independent of any claims that FSB

14

and Argent clients may have or have had against him prior to May 18, 2016. *Id.; see also U.S. Commodity Futures Trading Comm'n v. Arrington,* 998 F.Supp.2d 847, 874-877 (D. Neb. 2014) (ordering restitution and the imposition of civil monetary penalties against the defendant for violations of the Commodity Exchange Act, but providing that any amounts paid to any customer in accordance therewith "shall not limit the ability of that customer to prove independently in a separate action that a greater amount is owed from [the defendant] or any other person or entity"). To the extent any such claims the clients had as of May 2016 discharged in 2021, barring those clients' from thereafter asserting such claims, that discharge does not render the CFTC's claim likewise discharged. *See id.* at *14 (rejecting the argument that the CFTC's restitution claim was extinguished when investors negotiated checks for the partial return of their investments that were accompanied by a written release, observing that "Defendants do not cite, and the Court is not aware, of any authority holding that the [CFTC] is barred from seeking restitution, in the form of disgorgement of a defendant's unjust enrichment, if an investor waived his right to pursue a private action against the defendant."; *see also id.* at *14 n.41 (noting "the [CFTC] is an independent creditor with respect to [the debtor's restitution] liability."). Therefore, if the Court accepts the Debtor's argument that he did not and could not have known of the CFTC's claims because their investigation did not even begin until 2019, and the civil enforcement action was not filed until 2022, the discharge of the clients' pre-May 2016 claims is irrelevant to whether the CFTC's claims were discharged. Rather, accepting the Debtor's logic, the CFTC's claims did not arise until well after the 2016 Case was filed, and as such were not discharged in 2021.

### D. The Debtor's Specificity Argument is Moot Because No Portion of the Judgment is Dischargeable

As the Court advised the Parties at the Hearing, a determination that no portion of the Judgment was discharged renders the Debtor's Specificity Argument moot. There was a valid Judgment rendered by the District Court. That Judgment remains unchallenged, and its *res judicata effect* prevents this Court from reopening or reviewing its Findings of Fact or legal conclusions or the sufficiency of the evidence supporting them. *See, e.g., In re Thomas,* 626 B.R. 793, 802 (Bankr. E.D. Pa. 2021) (*res judicata* prevented the debtor from seeking recalculation of a note deficiency by a claim objection because it "would essentially determine that the Debtor did not owe the Judgment amount entered by the State Court. In other words, the Judgment amount would be supplanted by a determination of the claim objection allowing the Debtor to payoff [sic] the lien in the plan. Such a determination is prohibited by *res judicata*."). The fact that the Judgment entered by the District Court here was by default does not alter the analysis. *See In re Bystrek,* 17 B.R. 894, 896 (Bankr. E.D. Pa. 1982) ("A default judgment is as conclusive as that which is rendered after an answer and full trial. *Somportex v. Phila. Chewing Gum Corp.,* 453 F.2d 435) (3d Cir. 1971), *cert. denied,* 405 U.S. 1017 (1972). The *res judicata* effect of a default judgment prevents either party from relitigating the same cause of action. *In re MacMillan,* 579 F.2d 289 (3d Cir. 1978). Judgment by default is conclusive between the parties as to the cause of action upon which the judgment is based. *In re Roloff,* 598 F.2d 783 (3d Cir. 1979). The key factors are that there be notice and an opportunity to be heard. If these elements are present, the *res judicata* effect of a default judgment cannot be attacked.").[24]

---

[24] Moreover, as the CFTC argues, the Debtor has stipulated to the Judgment's nondischargeability. As such, any argument that the Judgment insufficiently details what portions of the restitution and monetary penalties relate to actions or inactions predating the filing of the 2016 Case is irrelevant.

Having found that no portion of the Judgment was subject to discharge in the 2016 Case, what is relevant for this Court is that the Judgment found the Debtor liable for a restitution obligation in the amount of $112,700,000.00, and a civil monetary penalty in the amount of $33,000,000.00. Those Judgment liabilities are not subject to attack in this Court as lacking specificity, and the Specificity Argument does not serve as a basis for disallowing the Proofs of Claim.

### E. The Debtor's Claim Ripeness Argument Lacks Merit

The Debtor argues that the CFTC's claims were contingent and unliquidated at the time of the Present Case's filing on August 2, 2022, because the CFTC's civil enforcement action was not even filed until September 27, 2022, nearly two months later, and the Judgment was not entered until June 30, 2023. According to the Debtor, the CFTC's claims therefore did not become an obligation until a future event, *i.e.*, entry of the Judgment, and as such were contingent and unliquidated. The Debtor cites in support *Mazzeo v. U.S. (In re Mazzeo)*, 131 F.3d 295 (2d Cir. 1997), where the court stated, "It is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to the liability occurred prior to the debtor's filing for bankruptcy." *Id.* at 303.

The Debtor's Claim Ripeness Argument is not a valid basis for objecting to the CFTC's Proofs of Claim. The concept of noncontingent, liquidated debt is relevant to a determination of whether the Debtor is eligible to be a chapter 13 debtor, not to whether a claim should be disallowed. *See* 11 U.S.C. §109(e) (providing, in relevant part, that only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated debts of less than $2,750,000). In fact, the *Mazzeo* decision the Debtor cites in support of his argument

17

addressed the concepts of noncontingent and liquidated debt in the context of whether the debtor in that case was eligible to be a debtor under chapter 13 of the Bankruptcy Code, not a claim objection. *Id.* at 131 F.3d at 302-305.[25]

Section 502(b) of the Bankruptcy Code, which *does* address claim objections, provides, *inter alia,* for the disallowance of a claim to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law *for a reason other than because such claim is contingent or unmatured*." 11 U.S.C. §502(b)(1) (emphasis added). As such, the Bankruptcy Code itself reflects that the contingent, unmatured nature of a debt is not itself a basis for disallowance of a claim. As the court in *In re Great Alliance Title and Escrow, LLC,* 2009 WL 2018986 (Bankr. E.D. Va. July 5, 2009) reasoned:

> As a threshold matter, the court agrees with [the claimant] that a claim is not subject to disallowance simply because it is unliquidated or contingent. The Bankruptcy Code's definition of a claim is very broad and specifically includes rights to payment that are unliquidated or contingent. The grounds for disallowance of a claim – which are set forth in §502 of the Bankruptcy Code – do not include the unliquidated or contingent nature of the claim. Indeed, the provision for disallowance of a claim on the ground that it is unenforceable against the debtor under applicable law specifically *excludes* disallowance 'because such claim is contingent or unmatured.' Rather, the Bankruptcy Code explicitly requires [the] court to *estimate* for purpose of allowance 'any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.

*Id.* at *2 (emphasis in original) (internal statutory citations omitted); *see also, e.g., In re Morales,* 506 B.R. 213, 221 (Bankr. S.D.N.Y. 2014) ("Pursuant to §502(b)(1), an objection to a claim cannot stand if the sole basis for the objection is that the claim is 'contingent or unmatured.'"); *In*

---

[25] The chapter 13 trustee (the "Trustee") filed a motion to dismiss the Present Case on the grounds that the Debtor is ineligible for chapter 13 based on the debt limits set forth in §109(e), which the Debtor and the Trustee resolve by Consent Order providing that if the Court determines that the total allowed amounts of the CFTC's Proofs of Claim exceed $2,750,000.00, the Debtor shall have two weeks to file a motion to convert the Present Case to chapter 11 or the case will be dismissed. See Bankr. Docket No. 249.

18

*re New Power Co.,* 313 B.R. 496, 507 (Bankr. N.D. Ga. 2004) (discussing the grounds for disallowance of a claim under §502(b) and stating that "the fact that a claim is contingent or unmatured is not grounds to disallow a claim unless that claim is for unmatured interest)

The Debtor's Claim Ripeness Argument hinges entirely on the CFTC's claims having been contingent and unliquidated until the Judgment was entered. That is not a proper basis for objection, and as such is not a basis for disallowance of the Proofs of Claim.

IV.   CONCLUSION

For the reasons set forth above, the Court finds that the Debtor has failed to overcome the prima facie validity of the CFTC Proofs of Claim. The Claim Objection is therefore overruled, and the CFTC's Proofs of Claim are allowed in the amounts asserted.

An order consistent with this Memorandum will be entered.

Dated:  July 23, 2024

_____
MAGDELINE D. COLEMAN
U.S. BANKRUPTCY JUDGE

Robert J. Lohr, II, Esquire
Lohr and Associates, Ltd.
1246 West Chester Pike, Suite 312
West Chester, PA 19382

Melissa C. Chiang, Esquire
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581

Deirdre M. Richards, Esquire
Fineman Krekstein & Harris
1801 Market Street, Suite 1140
Philadelphia, PA 19103

Thomas J. Barnes, Esq.
Egbert & Barnes, P.C.
349 York Road, Suite 100
Willow Grove, PA 19090

Kenneth E. West, Esquire
Chapter 13 Trustee
P.O. Box 1229
Philadelphia, PA 19105

United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106-2912

20